# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 16, 2010

Lyle W. Cayce
Clerk

No. 09-30545

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JAMES RAY COLEMAN

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Louisiana

Before GARWOOD, STEWART, and CLEMENT, Circuit Judges.

CARL E. STEWART, Circuit Judge:

James Ray Coleman was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He sought dismissal on the ground that his underlying felony conviction was not a valid predicate offense. The underlying felony conviction was pursuant to 18 U.S.C. § 371 for conspiracy to pirate encrypted satellite signals and to infringe a copyright. Coleman alleged that the conviction should fall within the 18 U.S.C. § 921(a)(20)(A) exception to § 922(g)(1) for offenses relating to the regulation of business practices. The district court ruled that Coleman's prior conviction did not fall within the § 921(a)(20)(A) exception and that the exception was not unconstitutionally vague, and denied the motion to dismiss. Coleman then conditionally pleaded guilty,

No. 09-30545

and now appeals the denial of the motion to dismiss. He also appeals the assignment of a four-point increase to his offense level for "possession of a firearm in connection with another felony offense" for stalking under LA. REV. STAT. § 14:40.2. We AFFIRM.

## I. FACTUAL AND PROCEDURAL HISTORY

A.    Factual Background

Frankie Manley called 911 to report that James Ray Coleman was on his way to her residence to kill her, her adult granddaughter, and himself. Deputies from the East Carroll Parish Sheriff's Office responded to the call and, upon arrival, found a visibly intoxicated Coleman at his shop across the street from the Manley residence. When asked if he "had anything on him," it was discovered that he had a pistol in his waistband.

Manley explained to the deputies that Coleman had been living at her residence, but that she had asked him to leave three days earlier because of his drinking problem. Manley told officers that Coleman called her several times a day begging her to allow him to return and threatening her if she did not. He did this for three days straight, and became upset each time Manley refused to allow him to return. He became belligerent and threatened her and her granddaughter. Manley believed her life was in danger and was so upset that she could not write a statement. Coleman was arrested for felonious stalking under Louisiana law.

B.    Procedural History

Coleman was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Coleman filed a Motion to Dismiss the indictment, alleging that the underlying felony conviction was not a valid predicate offense because it fell within the 18 U.S.C. § 921(a)(20)(A) exception to § 922(g)(1) for offenses relating to the regulation of business practices, and that Coleman was therefore not prohibited from possessing a firearm under §

2

No. 09-30545

922(g)(1). Coleman's underlying felony conviction was a 1994 conviction under 18 U.S.C. § 371 for conspiracy to manufacture or distribute equipment for decrypting satellite cable signals in violation of the Communications Act of 1934, 47 U.S.C. § 605(e)(4), and to willfully infringe a copyright in violation of the Criminal Copyright Infringement Statute, 17 U.S.C. § 506(A). *See United States v. Coleman*, No. 1:92-10016-3 (W.D. La. Feb. 4, 2009).

The district court denied the Motion to Dismiss. Relying on *Dreher v. United States*, 115 F.3d 330, 332 (5th Cir. 1997), the district court found that the offense of conspiracy pursuant to § 371 is not excepted from the scope of the felon in possession statute by § 921(a)(20)(A). The district court also stated that even if it were to consider the target offenses of the conspiracy, Coleman's prior conviction would still qualify as a predicate felony for purposes of the firearm statute because theft of copyright-protected satellite programming was not an unfair business practice. In addition, the court rejected Coleman's argument that the statute was unconstitutionally vague. Coleman then entered a conditional plea of guilty, reserving his right to appeal the denial of his motion to dismiss the indictment.

At sentencing, the Presentence Investigation Report (PSR) calculated Coleman's offense level at 15 with a criminal history category of I, yielding a Guidelines sentencing range of 18 to 24 months. After hearing testimony from an East Carroll Parish Sheriff's Deputy who participated in Coleman's arrest, the district court concluded that Coleman had possessed the firearm in connection with another felony offense—the Louisiana offense of felonious stalking—and increased his offense level by four. Coleman objected to this increase and the court overruled his objection. The court then imposed a 21-month term of imprisonment to be followed by a three-year term of supervised release. Coleman did not object to the reasonableness of his sentence.

3

## II. DISCUSSION

A.   Evaluating a Predicate Offense under the Business Practices Exception

Coleman first asserts that the district court erred by denying his Motion to Dismiss the indictment. He claims that his § 371 conviction for conspiracy to violate § 605(e)(4) and § 506(a) falls within the "business practices exception" created by § 921(a)(20)(A) for offenses "pertaining to antitrust violations, unfair trade practices, restraint of trade, or other similar offenses relating to the regulation of business practices." Because Coleman's motion to dismiss the indictment was based on the interpretation of a federal statute, this court reviews the denial of the motion *de novo*. *See United States v. Perez-Macias*, 335 F.3d 421, 425 (5th Cir. 2003).

The "felon in possession of a firearm" statute, 18 U.S.C. § 922(g)(1), makes it a crime "for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . ." to possess a firearm or ammunition which has traveled in interstate or foreign commerce. The "business practices exception" to § 922(g)(1), set out in 18 U.S.C. § 921(a)(20), excludes from the definition of a "crime punishable by imprisonment for a term exceeding one year . . . any federal or state offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices . . . ." Thus, a felon in possession of a firearm who has been convicted of one of the types of violations itemized in § 921(a)(20)(A) cannot be found guilty under § 922(g)(1) on the basis of that conviction.

In *Dreher v. United States*, this court applied a framework for evaluating whether a prior felony conviction falls within the § 921(a)(20)(A) business practices exception. 115 F.3d at 330. The defendant had been convicted of conspiracy to commit mail fraud and mail fraud in violation of 18 U.S.C. §§ 371, 1341 and 1342. *Id.* at 331. He petitioned for a declaratory judgment that he was

4

not a convicted felon under § 922(g)(1) because the predicate offenses fell within the business practices exception. *Id*. The defendant argued that the court should evaluate the conduct underlying the convictions— billing for services not rendered. The *Dreher* court, however, reasoned that "the plain meaning of the term 'offenses' in the context of the statute is the charged violation of law, not the facts underlying the violation of law." *Id*. at 332. The court evaluated whether the elements that the Government was required to prove under 18 U.S.C. §§ 371 and 1341 depended "on whether they have an effect upon competition."[1] *Id*. at 332-33. It analyzed the statutes as follows:

> The "offenses" (or violations of law) of which Dreher was convicted are conspiracy to commit mail fraud and mail fraud, pursuant to 18 U.S.C. §§ 371, 1341. To prove conspiracy under § 371, the government must show: (1) an agreement between two or more persons to commit an unlawful act and (2) an overt act by one of the conspirators in furtherance of the agreement. *See United States v. Schmick*, 904 F.2d 936, 941 (5th Cir. 1990). To convict under § 1341, the government must prove (1) a scheme to defraud; (2) intent to defraud; and (3) use of the mails in furtherance of the scheme. *See United States v. Nguyen*, 28 F.3d 477, 481 (5th Cir. 1994).

*Id*. at 332. The court then held that "[b]ecause violations of §§ 371 & 1341 in no way depend on whether they have an effect upon competition, they are not

---

[1]  Like this court in *Dreher*, other circuits have similarly adopted an elements test to determine whether a predicate offense has an effect on competition or on consumers for purposes of determining the applicability of § 921(a)(20). *See United States v. Schultz*, 586 F.3d 526, 530 (7th Cir. 2009) (holding that in order for an offense to fall within § 921(a)(20)(A)'s exception, the Government must "have been required to prove, as an element of the predicate offense, that competition or consumers were affected; possible incidental effects are not relevant."); *United States v. Stanko*, 491 F.3d 408, 421 (8th Cir. 2007) (holding that a prior conviction under the Federal Meat Inspection Act (FMIA) was not excepted by § 921(a)(20)(A) because "none of the provisions of the FMIA require the Government to prove an effect upon competition or commerce as an element of the offense."); *United States v. Meldish*, 722 F.2d 26, 28 (2d Cir. 1983) (refusing to apply the business practices exception where the defendant's prior conviction "in no way depends upon whether it has an effect on competition or consumers.").

'offenses' that are excluded from the § 921(a)(20) definition of 'crimes punishable by imprisonment for a term exceeding one year.'" *Id*. at 333.

The defendant in *Dreher* had been convicted of both conspiracy to commit mail fraud under § 371 and mail fraud under § 1341. *Id*. at 332. Both or either of those convictions could have potentially functioned as predicate offenses under § 922(g)(1). Consequently, the court's evaluation of the elements under both § 371 and § 1341 does not necessarily clarify whether, in cases such as the present one, the court must evaluate the elements of the offense underlying a conspiracy conviction where there is no conviction for the underlying offense. Additionally, although *Dreher* specifically rejected any examination of the *facts* underlying the charged crime, it did not clearly address whether the court might examine the *violation of the law* that is the target of the charged conspiracy.

The Government asserts that, consistent with the categorical approach of *Taylor v. United States*, 495 U.S. 575 (1990), the district court properly evaluated only the elements of the *charged* offense for the prior conviction to determine whether an offense falls within the business practices exception. The Government claims that the offenses that were the target of the conspiracy are merely underlying facts and are irrelevant to *Dreher*'s elements test. If we were to apply the approach advocated by the Government, we would not consider the target offenses of the conspiracy conviction, but would analyze only the elements of conspiracy pursuant to § 371. This reasoning would require the conclusion that *any* conspiracy conviction pursuant to § 371 would qualify as a predicate offense under § 922(g)(1).

We reject such a conclusion. According to the Government's position, a conviction under § 371 invariably qualifies as a predicate offense under § 922(g)(1), even where the "unlawful act" that was the object of the conspiracy is one of the offenses listed in § 921(a)(20)(A). But, for example, given that the language of § 921(a)(20)(A) exempts "any Federal or State offenses *pertaining to*

No. 09-30545

antitrust violations," conspiracy to commit an antitrust violation would be an offense "pertaining to antitrust violations." (emphasis added).

Moreover, a conviction for conspiracy under § 371 requires that the Government show: (1) an agreement between two or more persons to pursue an unlawful objective; (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy; and (3) an overt act by one or more of the members of the conspiracy in furtherance of the objective of the conspiracy. *United States v. Peterson*, 244 F.3d 385, 389 (5th Cir. 2001) (citing *United States v. Dadi*, 235 F.3d 945, 950 (5th Cir. 2000)). Thus, § 371 requires that the Government prove as an element that the conspiracy was targeted at a specific offense or "unlawful objective."[2] *See United States v. White*, 571 F.3d 365, 372 (4th Cir. 2009) ("[t]he Conspiracy Offense cannot be divorced from its . . . objective"). Consequently, if the targeted offense requires the Government to prove an effect upon competition as an element of the offense, then the conspiracy conviction falls within the business practices exception.

We therefore conclude that the district court erred by evaluating only § 371; the analysis under § 921(a)(20)(A) also requires an examination of the elements of the target offense of the conspiracy conviction. As the district court correctly held in the alternative, however, even considering the target offenses

---

[2] As described in the Fifth Circuit's pattern jury instructions:
Title 18, United States Code, Section 371, makes it a crime for anyone to conspire with someone else to commit an offense against the laws of the United States. . . . For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt: First: That the defendant and at least one other person made an agreement to commit the crime of _____ (describe) as charged in the indictment; Second: That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and Third: That one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy.
FIFTH CIRCUIT CRIMINAL PATTERN JURY INSTRUCTIONS (2001) § 2.20.

7

of the conspiracy, Coleman's prior offense qualifies as a predicate felony for purposes of § 922(g)(1). The first offense[3] charged as the target of Coleman's conspiracy conviction was 47 U.S.C. § 605(e)(4), the Communications Act of 1934. To prove a violation of § 605(e)(4), the Government must show that the defendant: (1) manufactured, assembled, modified, imported, exported, sold, or distributed; (2) any electronic mechanical, or other device or equipment that was primarily of assistance in the unauthorized decryption of satellite cable programming or direct-to-home satellite services; (3) while knowing or having reason to know that the device or equipment was primarily of assistance in the unauthorized decryption of satellite cable programming or direct-to-home satellite services. These elements do not require any proof of "an effect upon competition." *Dreher*, 115 F.3d at 332.

Coleman argues that the legislative history of the Communications Act indicates that the purpose of § 605 is to protect the competitive nature of the satellite industry and prohibit unfair trade practices. Courts have looked to the legislative history of a statute in order to determine whether it falls within the business practices exception. *See, e.g., Stanko*, 491 F.3d at 416-17 ("[T]he statement of congressional findings . . . includes concerns about the effects of unwholesome meat on competition and markets. These concerns, however, are subordinate to the FMIA's primary public-health purpose. . . "); *United States v. McLemore*, 792 F. Supp. 96, 98 (S.D. Ala. 1992) ("[O]dometer rollback is prohibited by 15 U.S.C. §§ 1984 and 1990c(a) as an unfair trade practice exactly because of its 'effect on competition and consumers.' This interpretation is

---

[3] We evaluate both the alleged target offenses of the conspiracy conviction because it is unclear from the record which of the two target offenses (or both) provided the basis for the conspiracy conviction. Where there is only one conspiracy count and the finder of fact was required to find that the conspiracy has as its object each of the target offenses, then it would presumably be sufficient to deny the exception if there was at least one target offense that did not meet it. However, if the conviction could have been based on either target offense, and we cannot discern which one it was based on, then both must be evaluated.

supported by the legislative history of the Truth in Mileage Act of 1986."). But legislative history remains secondary to an examination of the elements of the statute. *See Stanko*, 491 F.3d at 416-17 ("[M]ore significantly, none of the provisions of the FMIA require the Government to prove an effect on competition or consumers as an element of the offense."). Regardless, even taking into account legislative history, this court has stated that § 605(e)(4)'s "purpose is to proscribe the piracy of programming signals, whether they be for commercial or personal use." *United States v. Harrell*, 983 F.2d 36, 39 (5th Cir. 1993).

The other offense charged as the target of Coleman's conspiracy conviction was 17 U.S.C. § 506(A), the Criminal Copyright Infringement Statute. To prove a violation of § 506(A), the Government must show that the defendant: (1) willfully infringed; (2) a valid copyright; (3) for commercial advantage, for private financial gain, or in a manner otherwise prohibited by the statute. *See* 17 U.S.C. § 506(A). For the conviction to fall within the business practices exception, the Government must "have been required to prove, as an element of the predicate offense, that competition . . . [was] affected; possible incidental effects are not relevant." *Schultz*, 586 F.3d at 530; *see also Dreher*, 115 F.3d at 332. Under § 506(A), the Government would not have been required to prove any effect upon competition.

We hold that in evaluating whether a § 371 conspiracy conviction falls within the business practices exception, courts must evaluate the elements of § 371 and the target offenses of the conspiracy. Here, the conspiracy conviction for the target offenses of § 605(e)(4) and § 506(A) does not fall within the business practices exception. Coleman's prior conspiracy conviction is therefore a predicate offense for purposes of § 922(g)(1), and we affirm the conviction.

B.    Constitutionality of the Business Practices Exception

In his second point of error, Coleman asserts that the phrase in § 921(a)(20) excluding as predicate offenses "any . . . offenses pertaining to

antitrust violations, unfair trade practices, restraints of trade, or other similar offense relating to the regulation of business practices" is unconstitutionally vague. Whether a statute is unconstitutionally vague is a question of law, which this court reviews *de novo*. *United States v. Rudzavice*, 586 F.3d 310, 315 (5th Cir. 2009) (citing *United States v. Monroe*, 178 F.3d 304, 308 (5th Cir. 1999)).

The vagueness doctrine "bars enforcement of 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'" *United States v. Lanier*, 520 U.S. 259, 266 (1997) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)). A principal element of the vagueness doctrine is "the requirement that a legislature establish minimal guidelines to govern law enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (internal quotation marks and citation omitted). The touchstone of the analysis, however, "is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Lanier*, 520 U.S. at 267.

Addressing § 921(a)(20), the dissent in *United States v. Stanko* stated that it "is a criminal statute that is impermissibly vague." 491 F.3d at 420 (Bright, J., dissenting) (citing *Kolender*, 461 U.S. at 357). The *Stanko* dissent explained that to apply the exemption for "similar offenses" under § 921(a)(20), courts must determine which business offenses are similar to antitrust violations, unfair trade practices, and restraints of trade. *Id.* at 420-21. It reasoned that "[t]he complete absence of Congressional guidance and scarcity of federal precedent leaves the meaning of the similar offenses clause unconstitutionally vague, and thus the class of individuals who may possess a firearm without the threat of prosecution is in part undefined." *Id.* at 421.

Rejecting the conclusion that § 921(a)(20) is unconstitutionally vague, the *Stanko* majority explained that "Congress used the comparative term 'similar'

to modify 'offenses,' rather than saying 'any other offenses' or simply 'other offenses.'" *Id*. at 414. "The term 'similar' indicates an intent to limit the business practices clause's reach to offenses which are 'comparable' or 'nearly corresponding' to the enumerated offenses." *Id*. (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2120 (2002)). Because "the general phrase 'or other similar offenses relating to the regulation of business practices' refers back for its meaning to the three types of offenses Congress specifically enumerated," the court concluded that "the plain meaning of the statute indicates Congress's intent to limit the offenses that fall within the § 921(a)(20)(A) exclusion to those pertaining to antitrust violations, unfair trade practices, restraints of trade, or offenses similar to them." *Id*.

The Seventh Circuit in *United States v. Schultz* also rejected a vagueness challenge to the "similar offenses" clause of § 921(a)(20). 586 F.3d at 531. The *Schultz* court explained that:

> According to its terms, § 921(a)(20)(A) excludes those "[f]ederal or state offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices." In the final phrase, the word "similar" limits the term "offenses," so that it refers back to the three enumerated offenses, and is further limited by "relating to the regulation of business practices." Accordingly, an ordinary individual would have notice that the § 921(a)(20)(A) exception applies only if he or she committed an enumerated or similar offense related to the regulation of business practices.

*Id*.

Consistent with the reasoning of *Stanko* and *Schultz*, the business practices exception is not unconstitutionally vague because it requires that the excluded offenses be a specific type of business offense or similar to such specific offenses relating to the regulation of business practices. "Antitrust law" is "designed to protect trade and commerce from restraints, monopolies, price fixing, and price discrimination." BLACK'S LAW DICTIONARY, 104 (8th ed. 2004).

While it is "almost impossible to formulate an all inclusive definition of 'unfair trade practice' . . . implicit in the term itself is the requirement that the practice adversely affect either competitors or consumers . . . ." *Stanko*, 491 F.3d at 416. Likewise, "restraint of trade" has a definite meaning at common law and includes "contracts for the restriction or suppression of competition in the market, agreements to fix prices, divide marketing territories, apportion customers, restrict production and the like practices, which tend to raise prices or otherwise take from buyers or consumers the advantages which accrue to them from free competition in the market." *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 497 (1940).

These exempted offenses demonstrate that Congress intended to exclude under § 921(a)(20)(A) only commercial crimes violating statutes designed to prevent "an adverse economic effect on competition or consumers." *Dreher*, 115 F.3d at 332. The elements test used to determine whether an offense falls within the business practices exclusion is specific and overall gives fair warning as to which offenses meet the definition of a "crime punishable by imprisonment for a term exceeding one year" and which are excluded pursuant to the exception in § 921(a)(20)(A). We therefore affirm the district court's conclusion that § 921(a)(20)(A) is not unconstitutionally vague.

C.    U.S.S.G. § 2K2.1(b)(6) Enhancement

Finally, Coleman argues that the district court erred in assigning a four-point increase to the offense level for "possession of a firearm in connection with another felony offense." The felony offense to which the court referred was stalking under LA. REV. STAT. § 14:40.2, and Coleman claims there is insufficient evidence in the record to support a finding that he possessed a firearm while making any type of threat against the victim.

This court reviews the district court's application of the Sentencing Guidelines *de novo* and its factual findings for clear error. *United States v.*

*Delgado-Martinez*, 564 F.3d 750, 751 (5th Cir. 2009). In determining whether a Guidelines enhancement applies, the district court is allowed to draw reasonable inferences from the facts, and these inferences are fact findings reviewed for clear error. *United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006). The district court's determination of the relationship between the firearm and another offense is a factual finding. *United States v. Condren*, 18 F.3d 1190, 1199-1200 (5th Cir. 1994). "A factual finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Cooper*, 274 F.3d 230, 238 (5th Cir. 2001) (internal quotation marks and citation omitted). A factual finding is not clearly erroneous if it is plausible in light of the record as a whole. *Id.*

U.S.S.G. § 2K2.1(b)(6) provides that "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense . . . increase by four levels." The commentary to § 2K2.1(b)(6) states that the enhancement applies where the firearm "facilitated, or had the potential of facilitating," the other felony offense. U.S.S.G. § 2K2.1(b)(6), cmt. n.14. Thus, to obtain an enhancement under § 2K2.1(b)(6), the Government must establish by a preponderance of the evidence "that the firearm 'facilitated, or had the potential of facilitating' another felony offense and that the defendant used or possessed the firearm in connection with that offense." *United States v. Anderson*, 559 F.3d 348, 357 (5th Cir. 2009).

LA. REV. STAT. 14:40.2(A) provides as follows:

Stalking is the intentional and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress. Stalking shall include, but not be limited to the intentional and repeated uninvited presence of the perpetrator at another person's home . . . or any place which would cause a reasonable person to be alarmed, or to suffer emotional distress as a result of verbal or behaviorally implied

13

threats of death, bodily injury, sexual assault, kidnapping, or any other statutory criminal act to himself or any member of his family or any person with whom he is acquainted.

Stalking is a felony offense if the defendant "is found . . . to have placed the victim . . . in fear of death or bodily injury by the actual use of or the defendant's having in his possession during the instances which make up the crime of stalking a dangerous weapon or is found . . . to have placed the victim in reasonable fear of death or bodily injury." LA. REV. STAT. § 14:40.2(B)(2)(a). Louisiana defines "harassing" as "the repeated pattern of verbal communications or nonverbal behavior without invitation which includes but is not limited to making telephone calls, transmitting electronic mail, [or] sending messages via a third party. . . ." LA. REV. STAT. § 14:40.2(C)(1).

At sentencing, East Carroll Parish Sheriff's Deputy Brandon Wiltcher, who was present at the time of Coleman's arrest, testified that Manley made two 911 calls to request assistance and protection from Coleman. The first 911 call informed authorities that Coleman had stated that he was on his way to Manley's residence to kill her, her granddaughter, and himself. She called a second time shortly thereafter to report that Coleman was attempting to enter the residence and was making verbal threats to kill Manley and her granddaughter. When deputies arrived on the scene, Coleman was across the street from the Manley residence and armed with a pistol carried in his waistband. Deputy Wiltcher also testified that for three days Coleman had called Manley's home several times a day, making threats against her and her granddaughter.[4]

---

[4] In the sentencing context, a "district court may consider any relevant evidence without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." *United States v. Davis*, 76 F.3d 82, 84 (5th Cir. 1996) (internal quotation marks and citation omitted).

Coleman's contention that he did not possess the gun "in connection with" the felony stalking offense for purposes of § 2K2.1(b)(6) is without merit. Regardless, at a minimum possession of the gun "had the potential of facilitating" the felony stalking offense. *See* § 2K2.1(b)(6), cmt. n.14. Coleman correctly notes that the deputies did not see him in possession of a firearm at the time he made the threats to the Manleys that day and or on the previous days. There was likewise no testimony that either of the victims saw him with a weapon when he threatened them. However, the deputies arrived soon after the second 911 call and found Coleman immediately across the street from the Manley residence and armed. As the Government argues, it is logical to infer and quite plausible that Coleman had the firearm with him only moments before his arrest when he was attempting to enter the Manleys' residence. Further, Coleman had previously threatened to kill the Manleys and himself.

It is entirely reasonable to infer that Coleman intended to accomplish these threats with the firearm in his possession at the time that he was arrested. The district court's finding of fact that Coleman possessed the firearm in connection with the commission of another felony is therefore not clearly erroneous and we affirm the four-point increase to Coleman's offense level.

### III. CONCLUSION

For the reasons discussed, we AFFIRM Coleman's conviction and sentence.