# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-10804

United States Court of Appeals
Fifth Circuit

**FILED**

October 29, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TOD DEWAYNE PIMPTON, JR.,

Defendant - Appellant.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 1:11-CR-32-1

Before DAVIS, DeMOSS, and ELROD, Circuit Judges.

PER CURIAM:*

This case presents the issue of whether the district court erred in applying a United States Sentencing Guidelines enhancement for possession of a firearm "in connection with" the separate felony offense of possession of body armor. We hold that it did, and the error was not harmless. Thus, we vacate and remand the case for resentencing.

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 13-10804

## I.

This is our second opportunity to review Pimpton's sentence.  As described in detail in our May 6, 2013 opinion, during a routine traffic stop, police discovered a nine-millimeter pistol and body armor in the trunk of a car being driven by Tod Dewayne Pimpton, Jr. (Pimpton).  The firearm was inside a purse along with a pair of men's gloves, and the purse was lying on top of a black plastic bag containing the body armor.  Pimpton admitted he owned the body armor, but denied ownership of the firearm.  Because of a prior conviction, Pimpton was not permitted to possess either item.  Pimpton was indicted on two counts: (1) violent felon in possession of body armor; and (2) convicted felon in possession of a firearm.  Pimpton eventually pled guilty to the firearm possession charge, and the Government dismissed the body armor possession charge.

At sentencing, the probation officer recommended a four-level enhancement pursuant to United States Sentencing Guidelines Manual (USSG) § 2k2.1(b)(6)(B), which increases a firearms possession offense level if the firearm was possessed "in connection with" another felony offense.  *Id.*  The Government sought the enhancement based on Pimpton's possession of the body armor.  Pimpton objected to the enhancement, claiming that his firearm possession was not "in connection with" his possession of body armor.  The district court overruled the objection and applied the increase, relying on our interpretation of "in connection with" from *United States v. Villegas.  See* 404 F.3d 355, 363 (5th Cir. 2005) (interpreting "in connection with" to require that "the presence of a firearm facilitate[], and *ma[k]e inherently more dangerous*, another crime.") (emphasis added).

Pimpton appealed to this court.  We vacated the sentence because the USSG was amended in 2006 to include a definition of "in connection with" that contradicted *Villegas*'s interpretation.  *See* USSG § 2k2.1, cmt. n.14(A).  Under

2

No. 13-10804

the new definition, the increase applies if "the firearm . . . facilitated, or had the potential of facilitating, another felony offense." *Id.* Because this definition excludes the "ma[k]e inherently more dangerous" standard, the amendment abrogated *Villegas*. *United States v. Pimpton*, 558 F. App'x 335, 337–38 (5th Cir. 2013). We found error to the extent the district court relied on the "ma[k]e inherently more dangerous" language in *Villegas*, and we remanded the case for resentencing.

On remand, the district court applied the correct standard and imposed the same sentence, including the enhancement under § 2k2.1(b)(6)(B). Pimpton appealed the new sentence, again, specifically challenging the enhancement on the grounds that it was unsupported by the evidence. Pimpton also requests that, if we remand the case to the district court, we assign it to a different judge because "the interests of justice so require."

## II.

"The district court's interpretation or application of the Sentencing Guidelines is reviewed *de novo*, while its factual findings are reviewed for clear error." *United States v. Hernandez-Galvan*, 632 F.3d 192, 196 (5th Cir. 2011). "The district court's determination of the relationship between [a] firearm and another offense is a factual finding." *United States v. Coleman*, 609 F.3d 699, 708 (5th Cir. 2010) (citing *United States v. Condren*, 18 F.3d 1190, 1199–1200 (5th Cir. 1994)). Clear error exists "when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Cooper*, 274 F.3d 230, 238 (5th Cir. 2001). In other words, "[a] factual finding is not clearly erroneous if it is plausible in light of the record as a whole." *Coleman*, 609 F.3d at 708.

## III.

The central question in this case is whether Pimpton's possession of a firearm was "in connection with" his illegal possession of body armor. USSG §

3

No. 13-10804

2k2.1(b)(6)(B). The USSG instructs courts to apply the "in connection with" enhancement if possession of a firearm "facilitated . . . or had the potential of facilitating" another felony offense. USSG § 2k2.1, cmt. n.14(A). The Government must establish this requisite connection by a preponderance of the evidence, and the issue is one of fact for the district court. *Coleman*, 609 F.3d at 708. Furthermore, whether or not a defendant is charged with or convicted of the related offense is irrelevant for purposes of the enhancement. *United States v. Perez*, 585 F.3d 880, 886 (5th Cir. 2009).

> At Pimpton's resentencing hearing, the district court found that:

> [T]he definition of "in connection with," as defined by the Sentencing Guidelines, does require this 4-level enhancement to be applied. The firearm potentially did facilitate the possession of the body armor, or it had the potential of facilitating the possession of the body armor, which was another felony offense. Given all the facts and circumstances of this case, I believe that the 4-level enhancement is justified.

The district court did not offer further explanation, but adopted as its findings "those matters as set forth in the presentence report and the addendum, not only as it relates to the background data and information, but also the analysis made under the sentencing guidelines."

Pimpton argues that the "in connection with" finding was clear error. He notes that the evidence in this case shows only that the two items—his firearm and body armor—were at the same place at the same time, nothing more. Relying on our statements in *Pimpton*, he argues that mere proximity of the two items is legally insufficient to support an "in connection with" finding. 558 F. App'x at 338 n.3 ("[I]t is not immediately clear that mere proximity, without more, triggers [the enhancement].") (citing *United States v. Jeffries*, 587 F.3d 690, 693–94 (5th Cir. 2009)). Furthermore, he cites *Smith v. United States*, 508 U.S. 223 (1993), which served as the basis for the "facilitated or had the potential of facilitating" language adopted by the USSG. USSG App. C, Vol.

4

III, Amendment 691 at 177. *Smith* suggested that a firearm "facilitates" an offense when it "provid[es] a means of protection or intimidation." 508 U.S. at 238. In Pimpton's view, a gun does not serve as a means of protection or intimidation in the act of possessing body armor, unlike the possession of a gun during a robbery or burglary, or in proximity with valuable drugs that may need protection from a thief.

Citing cases from our sister circuits, the Government argues that proximity is enough if the evidence also shows that the defendant intentionally possessed the items together, rather than it happening by accident. *See, e.g.*, *United States v. Blankenship*, 552 F.3d 703, 705–06 (8th Cir. 2009). The Government further argues that the record here shows much more than mere proximity. It points us to the following additional facts: Pimpton "had a prior conviction for possessing a firearm in furtherance of a drug-trafficking crime; he was on federal supervised release when discovered with the firearm and body armor; he was stopped in a high crime area at about 9:30 at night with the items; he was accompanied by a convicted felon who had a crack pipe." In the Government's view, the proximity of the gun and body armor "takes on additional meaning" when these other facts are considered. It argues that body armor, like drugs, "has considerable value, particularly among criminals who cannot as easily purchase it through legitimate channels." Since Pimpton could have used the firearm to protect the body armor from a thief or to resist police arrest relating to his possession of the armor, the Government argues that the firearm had the potential to facilitate his possession of the body armor.

We agree with Pimpton that the district court's finding was clear error. To begin with, we have already held that mere simultaneous possession of a firearm and another item—possession of which constitutes a separate offense—is not enough to satisfy the "in connection with" requirement under USSG § 2k2.1(b)(6)(B). *Jeffries*, 587 F.3d at 693. *Jeffries* involved a prior felon

who got into a fight at a bar and took a gun off of his fellow combatant. He left the scene and drove away in his car, which contained a single rock of crack-cocaine. Shortly thereafter, the police stopped the felon and found both the gun and drugs in his vehicle. The district court, as here, adopted the PSR without change and imposed the sentence increase without explanation. We vacated the sentence in *Jeffries* on the grounds that the evidence did not support a finding that the defendant possessed his firearm "in connection with" his possession of drugs. *Jeffries*, 587 F.3d at 694–95.

For guidance, we looked at the Application Notes in the USSG.[1] *Compare* USSG § 2k2.1, cmt. n.14(A) *with id.* n.14(B). Note 14(B) instructs courts to apply the enhancement based on mere proximity if the related offense is burglary or *drug trafficking*. *Jeffries*, 587 F.3d at 692. For all other offenses, including *drug possession*, the court must find that the firearm "facilitated, or had the potential of facilitating" the related offense. *Jeffries*, 587 F.3d at 692–93. Put another way, the record must show some evidence that the firearm "emboldened" the defendant to engage in the other possession crime or would be used to protect the other item. *Jeffries*, 587 F.3d at 695. We explained that drug possession cases in which the enhancement was upheld often include record evidence that the defendant was a seller or distributor of drugs. *Id.* at 693 (citing *e.g.*, *Condren*, 18 F.3d at 1197–98). In those cases, the firearm served a protective purpose that facilitated the possession of drugs likely intended for sale.[2] In concluding, we adopted the rule that when a case

---

[1] Commentary in the "application notes is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that [G]uideline." *See United States v. Miller*, 607 F.3d 144, 148 n.2 (internal quotation marks omitted).

[2] *See e.g.*, *United States v. Alcantar*, 733 F.3d 143, 147 (5th Cir. 2013) (involving a related offense of possession of cocaine *with intent to deliver*); *United States v. Jenkins*, 566 F.3d 160, 164 (4th Cir. 2009) (involving a defendant who had a loaded firearm and drugs *on*

involves possession only of a "user quantity of drugs," there is no presumption of trafficking and the record must contain evidence that the firearm emboldened the defendant to possess or provided protection for the items. *Jeffries*, 587 F.3d at 694–95.

The Government argues that Pimpton's case includes such additional evidence. In the Government's view, possessing body armor is like possessing a marketable and valuable quantity of drugs, because body armor may be sold at a high price in certain markets. Thus, a firearm has the potential of facilitating possession of body armor by serving a protective purpose. We agree with the Government that it is conceivable that a firearm *could* be used to protect a marketable piece of body armor from a thief, but the mere fact that such a scenario is *conceivable* is not enough to satisfy § 2k2.1(b)(6)(B). *See Jeffries*, 587 F.3d at 694–695, & n.9 (noting that the potential of facilitating "will usually be found," but the nexus cannot simply be presumed). There must be some affirmative evidence that this scenario is *plausible. Pimpton*, 558 F. App'x at 338 n.3 ("Hypothetical uses for body armor have no bearing on the specific offense of possessing body armor."). To be clear, there must be some evidence that Pimpton planned to use his firearm to protect the body armor. That the body armor could be used to protect his person or facilitate his use of a firearm to commit a related offense is irrelevant under the Guideline.

The district court gave no explanation of how Pimpton's firearm plausibly facilitated (or had the potential of facilitating) his possession of the body armor, it only concluded that it was so based on the record as a whole. There was no evidence of a potential buyer or that Pimpton was planning a sale. There was no evidence that Pimpton feared theft, especially given that

---

*his person* while standing on a public street, late at night, and *near where a gun had recently been fired*); *United States v. Anderson*, 559 F.3d 348, 357–58 (5th Cir. 2009) (involving a defendant carrying a firearm on his person *while delivering* drug paraphernalia).

his firearm was hidden away in his trunk and not readily accessible.  The record reflects only that Pimpton had both items in the trunk of his car while driving at night in a high-crime area.  Without some evidence that Pimpton was a seller or distributer of body armor or had some other specific reason to protect the body armor, the mere proximity of the items is not enough to support the enhancement.  We view this case like the "user quantity" drug possession in *Jeffries* and see nothing in the record to support the district court's conclusion.

The Government, to no avail, relies on cases from our sister circuits.  It argues that other circuits look for whether a defendant *intentionally* possesses a firearm with another item of contraband (as opposed to possession being coincidental).  *See United States v. Blankenship*, 552 F.3d 703, 705 (8th Cir. 2009) ("One important factor was that [defendant] possessed the guns and drug residue in his own home, making it more likely that it was just coincidence that he possessed both simultaneously in the relative expanse of a residence.") (analyzing *United States v. Smith*, 535 F.3d 883, 885–86 (8th Cir. 2008)); *see also United States v. Jenkins*, 566 F.3d 160, 164 (4th Cir. 2009) (suggesting that the enhancement is inapplicable if the firearm's presence was mere coincidence).  However, none of the cases cited by the Government actually relied on this intentional/accidental dichotomy to apply an enhancement.  The cases only support the negative proposition that accidental or coincidental possession is *insufficient* for the enhancement.  In fact, in the above "accidental" cases, the defendants knew full well that they simultaneously possessed both a firearm and other contraband.  But, mere simultaneous, intentional possession was not enough.  Even in those circuits, there must be a connection between the two items such that the firearm facilitates possession

8

of the other contraband.[3] S*ee, e.g.*, *Jenkins*, 566 F.3d at 162 ("[T]he firearm [must have] some purpose or effect with respect to the other offense, including if the firearm was present for protection or to embolden the actor.") (internal citations and quotation marks omitted); *Blankenship*, 552 F.3d at 706 ("[Defendant] possessed a 'user' amount of methamphetamine in his automobile, and there is no evidence or allegation that he is a drug trafficker."). Moreover, even if the Government were correct that other circuits rely on the intentional/accidental dichotomy, we are bound by our own precedent in deciding the issue, and our precedent requires more than mere intentional, simultaneous possession.

The district court committed procedural error when it improperly applied the § 2k2.1(b)(6)(B) enhancement, increasing Pimpton's advisory guidelines range. *Gall v. United States*, 552 U.S. 38, 51 (2006). When a significant procedural error occurs at sentencing, remand for resentencing is required unless the error was harmless. *United States v. Delgado-Martinez*, 564 F.3d 750, 752–53 (5th Cir. 2009). Harmless error exists where the proponent of the sentence demonstrates that the sentence would have been the same absent the error. *United States v. Johnson*, 648 F.3d 273, 278 (5th Cir. 2011). Here, the Government does not argue that, absent the error, the district court would have imposed the same sentence. Nor could it given that the enhancement rests on the error and Pimpton's offense level would have been four points lower without the enhancement. The lower offense level would

---

[3] The Third Circuit follows this same approach. Relying on the Fourth, Fifth, and Eighth Circuits, it has held that mere drug possession is insufficient to show facilitation. *See United States v. West*, 643 F.3d 102, 113–14, 116 (3d Cir. 2011) (The facts do not support the conclusion that "possession of the .38 revolver located in a backpack in the trunk of [defendant's] car emboldened him to engage in the crime of marijuana possession, or served to protect the marijuana in his glove compartment." *Id.* at 116) (citing *United States v. Jeffries*, 587 F.3d at 695).

have placed his sentence within a guidelines range of 41–51 months, rather than 63–78 months.  Therefore, the record does not reflect that the district court would have imposed the same 78-month sentence using the lower guidelines range.  The error was not harmless.  *See Johnson*, 648 F.3d at 278–80.

## IV.

Pimpton requests that on remand we assign this case to a different district court judge because the interests of justice so require.  Without the presence of personal bias under 28 U.S.C. § 455, we typically reassign a case only on the narrow basis that the initial judge cannot "make a decision in regard to [the] defendant with the impartiality required of all who sit in judgment." *United States v. Long*, 656 F.2d 1162, 1165 (5th Cir. 1981); *see also Johnson v. Mississippi*, 403 U.S. 212, 216 (1971) (per curiam) ("Trial before an unbiased judge is essential to due process." (internal quotation marks omitted)).  A defendant can satisfy this standard by identifying comments made by the judge that indicate he had "foreclosed meaningful consideration" of the evidence he was required to consider.  *Long*, 656 F.2d at 1165 (noting that the trial judge "stated twice on the record that no presentence report could change his mind").

Pimpton has identified no such comments.  His request is based on his conjecture that the initial judge will have "substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous." *See Simon v. City of Clute, Tex.*, 825 F.2d 940, 943–44 (5th Cir. 1987).  We see no basis for such conjecture.

## V.

Therefore, Pimpton's sentence is VACATED and the case is REMANDED for resentencing in accordance with this opinion.