# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 17, 2024

Lyle W. Cayce
Clerk

———————

No. 23-30589

———————

United States of America,

*Plaintiff—Appellee*,

*versus*

Justin Henry,

*Defendant—Appellant*.

———————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:23-CR-14-1

———————————————————

Before King, Stewart, and Higginson, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:

Justin Henry pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He now appeals his conviction and sentence. The core issue in Henry's appeal is whether it is appropriate to apply § 2K2.1(b)(6)(B) of the United States Sentencing Guidelines to a defendant for possessing a firearm "in connection with" possession of stolen property where the evidence of a connection between the two acts is possession of both items at the same time. We adhere to precedent that the enhancement is not appropriate here. Accordingly, we

No. 23-30589

AFFIRM Henry's conviction but VACATE Henry's sentence and REMAND for resentencing.

I

On January 6, 2023, New Orleans Police Department (NOPD) officers saw a burgundy 2023 Infiniti QX80 in the parking lot of a shopping center on Downman Road, in New Orleans East. Officers recognized the Infiniti as a car that had been stolen from the Norfolk Southern railyard and observed Henry exit a store in the shopping center and enter the car. Two marked NOPD cars then arrived at the parking lot. Henry exited the vehicle and fled on foot. As he fled, he removed a 9mm semi-automatic pistol "that was concealed on his person" and threw it to the ground.

Henry had previously been convicted of three felonies under Louisiana law: attempt or conspiracy to distribute MDMA, aggravated battery, and aggravated escape. On January 26, 2023, Henry was charged in a single-count indictment with possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He pleaded guilty to that count on April 27, 2023, and was sentenced on August 17, 2023.

The presentence investigation report (PSR) prepared in advance of sentencing reflected that on November 29, 2022, a special officer assigned to the Norfolk Southern Police Department notified the NOPD that 29 vehicles had been stolen from the Norfolk Southern distribution yard through a hole cut in the gate. The PSR also stated that on December 29, 2022, a victim who was later identified as Henry walked into New Orleans East Hospital with several gunshot wounds. Henry told law enforcement that he was walking down the street and heard gunshots, then jumped into a truck to hide. He said that a passerby subsequently picked him up and took him to the hospital.

No. 23-30589

Law enforcement officers located a black 2023 Infiniti QX80[1] without a plate that had been struck by projectiles several times and saw a blood trail that led from the vehicle to Downman Road. According to the PSR, police "obtained video footage of the defendant and determined immediately before the shooting the defendant had entered the Infiniti which was reported as stolen."

The draft PSR assessed Henry's total offense level at 19[2] for a Guidelines range of 57 to 71 months. The government objected to the special offense characteristics section of the PSR, arguing that "a +4[-level] enhancement should be applied because Mr. Henry possessed the firearm 'in connection with another felony offense.'" Probation declined to alter the PSR to apply the enhancement, citing our court's decision in *United States v. Jeffries*, 587 F.3d 690 (5th Cir. 2009).

At sentencing, the government presented its objection to the district court, arguing that "the question is whether the firearm facilitated or had the potential of facilitating the possession of that stolen car," and that, here, the "firearm facilitate[d] or ha[d] the potential of facilitating the continued possession of the stolen vehicle from anyone who would try to take it from him." Defense counsel responded that the enhancement did not apply, because "[t]here [wa]s no information that Mr. Henry knew the car was stolen," and that Henry possessed the gun "in protection of himself, not protection of a stolen car[.]" The district court, citing the official commentary to § 2K2.1, asked if the firearm "had the potential of facilitating

---

[1] The black 2023 Infiniti QX80 was a different vehicle than the burgundy 2023 Infiniti QX80 that Henry fled from before his arrest.

[2] Henry's base offense level was 22, but Probation assessed a 3-level reduction for acceptance of responsibility.

another felony offense[.]" Henry argued that it did not, because when the police approached the car, Henry jumped out of the car and ran away.

The trial court agreed with the government and adopted the four-level enhancement under § 2K2.1(b)(6)(B), giving Henry a total offense level of 23. As a result, his guidelines range increased from 57 to 71 months, to 84 to 105 months. The court sentenced Henry to 100 months in prison, followed by three years of supervised release. This timely appeal followed.

## II

Henry argues for the first time on appeal that 18 U.S.C. § 922(g)(1) is facially unconstitutional. Our review is for plain error. *Rosales-Mireles v. United States*, 585 U.S. 129, 134-35 (2018). Henry asserts that § 922(g)(1) violates the Second Amendment in light of *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).  But Henry's challenge is foreclosed by *United States v. Jones*, 88 F.4th 571 (5th Cir. 2023) (per curiam). There, our court rejected a plain-error challenge to § 922(g)(1) because "it is unclear that *Bruen* dictates such a result," there is an "absence of binding precedent holding that § 922(g)(1) is unconstitutional," and "[t]he Third and Eighth Circuits have . . . reached conflicting results" on the issue. *Id.* at 574 (internal quotation marks omitted); *see also United States v. Diaz*, ____ F.4th ____, 2024 WL 4223684, at *9 (5th Cir. Sept. 18, 2024) (holding that Diaz could not sustain a facial challenge to § 922(g)(1) because "the statute is constitutional as applied to the facts of his own case"). Henry's plain-error challenge fails.

## III

We next consider Henry's argument that the district court erred in applying the § 2K2.1(b)(6)(B) enhancement to his sentence. "We review the district court's interpretation and application of the Sentencing Guidelines *de novo* and its factual findings for clear error." *United States v. Duffey*, 92

F.4th 304, 309 (5th Cir. 2024) (citation omitted). "A district court's determination that a firearm was used or possessed in connection with another felony offense for purposes of U.S.S.G. § 2K2.1(b)(6)(B) is a factual finding that is reviewed for clear error." *United States v. Bass*, 996 F.3d 729, 742 (5th Cir. 2021). Under this standard, "a sentencing court's factual findings will be upheld if they are plausible in light of the record as a whole, and they will be deemed clearly erroneous only if a review of all the evidence leaves this court with the definite and firm conviction that a mistake has been committed." *United States v. Richard*, 901 F.3d 514, 516 (5th Cir. 2018) (internal quotation marks and citation omitted).

"The proponent of an adjustment to the defendant's base offense level bears the burden of establishing the factual predicate 'by a preponderance of the relevant and sufficiently reliable evidence.'" *United States v. Aguilar-Alonzo*, 944 F.3d 544, 549 (5th Cir. 2019) (quoting *United States v. Richardson*, 781 F.3d 237, 249 (5th Cir. 2015)). "When making factual findings for sentencing purposes, a district court 'may consider any information which bears sufficient indicia of reliability to support its probable accuracy.'" *United States v. Abrego*, 997 F.3d 309, 312 (5th Cir. 2021) (quoting *United States v. Solis*, 299 F.3d 420, 455 (5th Cir. 2002)). The Sentencing Guidelines provide that, "[i]n resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). "Generally, a PSR bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations." *United States v. Zuniga*, 720 F.3d 587, 591 (5th Cir. 2013) (internal quotation omitted).

IV

No. 23-30589

Section 2K2.1(b)(6)(B) provides for a four-level enhancement to a defendant's offense level if he "used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense[.]" Application Note 14(A) explains that the term "in connection with" means that the "the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1, cmt. n.14(A).

Henry challenges the district court's application of the sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B) in two ways. First, he argues the government failed to present sufficient, reliable evidence that he committed "another felony offense." Second, he argues the government did not adduce any evidence to show that his possession of the firearm was "in connection with" the underlying felony—here, possession of a stolen vehicle. We address each argument in turn.

A

The Application Notes of the Guidelines define "another felony offense," for purposes of § 2K2.1(b)(6)(B), as "any federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." § 2K2.1, cmt. n.14(C). In its objection to the PSR, the government urged application of the § 2K2.1(b)(6)(B) enhancement because Henry's possession of a stolen vehicle was a violation of state and federal law, citing 18 U.S.C. § 659 (possession of goods stolen from interstate shipment).[3]

_____

[3] After he was arrested while fleeing from the burgundy Infiniti QX80, Henry was charged with violating La. Stat. Ann. § 14:69 (illegal possession of stolen things), La. Stat. Ann. § 14:95 (illegal carrying of weapon), and La. Stat. Ann. § 14:95.1 (possession of firearm

No. 23-30589

Henry argues that the enhancement should not apply because the government cannot show by a preponderance of the evidence that he had the knowledge, or a "good reason to believe," that the car was stolen. The government responds that the district court reasonably inferred that Henry knew the QX80 was stolen based on Henry's flight from the scene. While the defense, at sentencing, introduced a possible competing inference—that Henry fled because he knew he was a felon in possession of a firearm, not because he was in a stolen car—the government argues that it is not clear error for a district court to choose between competing inferences that are "plausible in their own right[.]"

The government also highlights the proximity between the November 29, 2022 theft of 29 vehicles from the railyard and Henry's presence in two of those cars, and contends that the district court could reasonably infer it was "not a coincidence that Henry, in less than two weeks' time, had been placed in two stolen 2023 Infinity [*sic*] QX80s just 0.1 miles and one minute apart." In fact, the government continues, it would be "implausible to infer Henry was not aware of the stolen nature" of the car involved here. Additionally, the government suggests that given Henry's extensive criminal history and his meager job history, it was doubtful he could have lawfully come into possession of a luxury vehicle.

In the context of the federal possession of stolen property statute, this court has held that "unexplained possession of recently stolen property will sustain an inference of knowledge that the property was stolen." *United States v. Payne*, 467 F.2d 828, 831 (5th Cir. 1972). In Louisiana, by contrast, "mere possession of stolen property does not create a presumption that the

_____

by felon). During the sentencing, Henry's counsel and the district court noted that the § 14:69 charge for illegal possession of stolen things had been dismissed by the state court.

person in possession of the property received it with knowledge that it was stolen by someone else." *State v. Chester*, 707 So. 2d 973, 974 (La. 1997) (per curiam) (quoting *State v. Ennis,* 414 So. 2d 661, 662 (La. 1982)). However, factfinders "may infer the defendant's guilty knowledge from the circumstances of the offense." *Id.* And the Louisiana illegal possession of stolen things statute, La. Stat. Ann. § 14:69, "permits a purely objective inquiry into the element of guilty knowledge." *State v. Calloway*, 1 So. 3d 417, 422 (La. 2009) (per curiam).

In this case, an objective inquiry could plausibly result in the same inferences that the district court made. The defendant was linked to two luxury cars that were among a cache of cars recently stolen from a railyard. After Henry was shot, a law enforcement officer found the black 2023 Infiniti QX80 with bullet holes in it, and no license plate, and saw video showing Henry jumping into that vehicle. Ten days later, when Henry was seen entering another stolen 2023 Infiniti QX80, he ran away as soon as officers approached. As the government has pointed out, "evidence of an accused's flight is generally admissible as tending to establish his guilt." *United States v. Williams*, 775 F.2d 1295, 1300 (5th Cir. 1985) (citation omitted). Henry reasonably argues that he ran because he was a felon in possession of a firearm. But given the circumstantial evidence that Henry knew he possessed a stolen car, the district court did not err when it chose between two theories that were both "plausible in their own right[.]" *United States v. Choulat*, 75 F.4th 489, 493 (5th Cir. 2023).

B

As this court noted in *United States v. Jeffries*, the Application Notes to § 2K2.1(b)(6) provide that, "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia, the enhancement automatically applies."

587 F.3d 690, 692 (5th Cir. 2009) (quoting § 2K2.1 cmt. n.14(B)(ii)) (emphasis removed). However, "for all other felony offenses that are *not* drug trafficking offenses (or burglary, which is separately addressed), the enhancement only applies 'if the firearm . . . facilitated, or had the potential of facilitating,' that offense; no presumption is made." *Id.* at 692-93 (quoting § 2K2.1 cmt. n.14(A)) (emphasis in original).

In *Jeffries*, the defendant was pulled over after an altercation with a man named "Mississippi," and during a search of the defendant's car, police found a gun—which he said he had taken from Mississippi during the altercation—and a single rock of cocaine base. 587 F.3d at 691. The PSR recommended a § 2K2.1(b)(6)(B) enhancement based on Jeffries's possession of the gun with the underlying felony of cocaine possession. *Id.* The district court adopted this recommendation, and in response to Jeffries's appeal, the government argued that "mere physical proximity, without more, is enough" for the enhancement to apply. *Id.* at 692-93. Our court sided with Jeffries, vacating and remanding for resentencing. This court found that the record contained no evidence to support a finding that possessing the firearm "facilitated" his cocaine possession, "emboldened" him to possess the cocaine, or helped him "protect" his cocaine. *Id.* at 695 (citations omitted). "At best, the Government has shown only that Mr. Jeffries possessed cocaine and a firearm at the same time." *Id.* at 693. This court then ordered resentencing.[4]

_____

[4] Other circuit courts have remanded for resentencing when there is little fact finding or when a nexus is missing from a sentencing court's analysis under § 2K2.1(b)(6)(B). *See United States v. Briggs*, 919 F.3d 1030, 1032-33 (7th Cir. 2019) (remanding for resentencing because "the mere fact that guns and drugs are found near each other doesn't establish a nexus between them"); *United States v. Bolden*, 964 F.3d 283, 288 (4th Cir. 2020) (remanding for factfinding and resentencing because, "while the firearms and the cocaine were found in the same bedroom, . . . that physical proximity is

Following *Jeffries*, this court considered the applicability of § 2K2.1(b)(6)(B) outside of the drug possession or trafficking context. *See United States v. Pimpton*, 589 F. App'x 692 (5th Cir. 2014). In *Pimpton*, the defendant had been subjected to a traffic stop, during which police had found a 9mm pistol and body armor in the trunk of his car. *Id.* at 696. The district court applied the § 2K2.1(b)(6)(B) enhancement because the "firearm potentially did facilitate the possession of the body armor, or it had the potential of facilitating the possession of the body armor, which was another felony offense." *Id.* at 694. But under *Jeffries*, this was not enough. As this court noted, the district court did not explain how the firearm plausibly facilitated the possession of the body armor. "Without some evidence that Pimpton was a seller or distributer of body armor or had some other specific reason to protect the body armor, the mere proximity of the items is not enough to support the enhancement." *Id.* at 696. In short, to apply the Guideline, "there must be some evidence that Pimpton planned to use his firearm to protect the body armor. That the body armor could be used to protect his person or facilitate his use of a firearm to commit a related offense is irrelevant under the Guideline." *Id.*

Here, the theory urged by the government at Henry's sentencing was not "plausible in light of the record as a whole," *Richard*, 901 F.3d at 516, because there is a lack of evidence to suggest a relationship between the gun and the stolen car aside from proximity. In fact, the government analogized possession of a stolen vehicle to drug trafficking, stating at sentencing: "I think the parallel is firearms are tools of the drug trafficking trade because drugs are illegal, so you can't go to the police. . . . It's the same thing here with the car." This is precisely contrary to the holding of *Jeffries*: that,

_____

not by itself enough to establish the necessary connection between guns and a drug possession offense").

outside of the context of drug trafficking, "no presumption is made" that a firearm facilitated possession of other contraband just because the two items are in close proximity and both are illegally possessed. 587 F.3d at 693.

On appeal, the government highlights that Henry was seen in at least two stolen 2023 Infiniti QX80s prior to his arrest and that the Kelley Blue Book value of the car is over $75,000. The government reasons that, due to this value, "[i]t is no stretch to infer that Henry would want to maintain this valuable possession with a concealed semi-automatic pistol on his person." In reality, these facts rest uneasily beside each other and do little work to support a theory of "facilitation"—especially when one considers the countervailing fact of the attempt on Henry's life one week before he was found with a firearm. The government puts forth an argument that Henry had access to multiple stolen 2023 Infiniti QX80s, and perhaps to an even greater cache of cars stolen from the Norfolk Southern railyard. This suggests fungibility, as it is unlikely that a person expects to possess, for too long, either a vehicle that has been reported stolen or one without a license plate. After all, Henry did, apparently, switch from one 2023 Infiniti QX80 to another within a week's time, and the second vehicle was fairly immediately—in less than 10 days—identified by police as stolen. Given this, the government's contention that Henry would have seen one of these cars as a valuable asset meriting potentially lethal protection does not hold water without an affirmative district court finding of facilitation.[5]

Given the lack of a finding of facilitation connecting Henry's possession of the gun to his possession of the car, and, oppositely, the

---

[5] In fact, when the patrol officer approached Henry while he was in the burgundy 2023 Infiniti QX80, he immediately ran, without any attempt to engage with the officer, and dropped the gun. He did not seek to maintain possession of the vehicle and he certainly did not use a firearm to do so.

No. 23-30589

government's reliance on a legal theory that this court rejected in published case law, we AFFIRM Henry's conviction but VACATE Henry's sentence, and, as Henry requests, REMAND for resentencing.