# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 26, 2025

Lyle W. Cayce
Clerk

No. 23-60621

—————————

United States of America,

*Plaintiff—Appellee,*

*versus*

Jeremy Jason Schnur,

*Defendant—Appellant.*

———————————————————————

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:23-CR-65-1

———————————————————————

Before Smith, Higginson, and Douglas, *Circuit Judges.*

Dana M. Douglas, *Circuit Judge*:

A grand jury indicted Jeremy Jason Schnur—who had previously been convicted of several felonies, including aggravated battery, burglary, and robbery—for unlawfully possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Schnur moved to dismiss the indictment, arguing that, as applied to him, § 922(g)(1) violates the Second Amendment. The district court denied the motion and, after a bench trial, found Schnur guilty as charged. Schnur now appeals, again raising his as-applied challenge to § 922(g)(1). For the reasons that follow, we AFFIRM.

No. 23-60621

## I.

On April 10, 2023, agents with the United States Marshals Service Gulf Coast Regional Fugitive Task Force and the Biloxi Police Department responded to a report that Schnur, a fugitive wanted in Okaloosa County, Florida, was traveling to the Hard Rock Casino in Biloxi, Mississippi. The agents successfully detained Schnur after they observed him standing next to his motorcycle in the casino's parking garage. When asked if he was in possession of any weapons, Schnur informed the agents that he had a pistol concealed in the right pocket of his motorcycle jacket. From this pocket, agents retrieved a loaded Canik 9mm semiautomatic pistol manufactured in Turkey.

A record check revealed Schnur had a lengthy criminal history, including several state-court felony convictions. Three such felony convictions are relevant to our decision today. The first is a 1994 Illinois state-court conviction for robbery, for which Schnur was sentenced to twenty-four months' probation and 100 hours of public service work. Two years later, in 1996, an Illinois state court convicted Schnur of burglary and sentenced him to four years' imprisonment. Lastly, in 2016, a Florida state court convicted Schnur of aggravated battery causing bodily harm and sentenced him to 364 days' imprisonment.

Following the incident at the Hard Rock Casino, a federal grand jury charged Schnur in an indictment with a single count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Schnur moved to dismiss the indictment on the ground that § 922(g)(1) is unconstitutional as applied to him under the Supreme Court's precedent in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). After a hearing on the matter, the district court denied the motion.

2

No. 23-60621

Schnur then waived his right to a jury trial and proceeded to a bench trial based on stipulations that he possessed a certain firearm, the firearm traveled between Turkey and the United States, he was knowingly in possession of that firearm on the date of his arrest, and he knew he had been convicted of a felony. At trial, Schnur renewed his motion to dismiss the indictment, which the district court again denied. The district court ultimately found Schnur guilty as charged and sentenced him to seventy-eight months of imprisonment, three years of supervised release, and a $3,000 fine. Schnur timely appealed.

## II.

Because Schnur preserved his as-applied challenge to § 922(g)(1) by raising it in his motion to dismiss the indictment and at trial, we review the constitutionality of § 922(g)(1) de novo.[1] *See United States v. Howard*, 766 F.3d 414, 419 (5th Cir. 2014) (citing *United States v. Clark*, 582 F.3d 607, 612 (5th Cir. 2009)); *accord Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000).

## III.

Title 18 U.S.C. § 922(g)(1) makes it unlawful for an individual to possess a firearm if he "has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." On appeal, Schnur argues that § 922(g)(1), as applied to him, is unconstitutional under the Second Amendment.

---

[1] Since our review is de novo, we conduct an independent (*i.e.*, without deference to the district court) analysis of the constitutionality of § 922(g)(1) as applied to Schnur. This court therefore need not consider alleged errors in the district court's analysis, including its purported violation of the principle of party presentation and erroneous reliance on pre-*Bruen* caselaw. And because we reach the same conclusion as the district court regarding Schnur's as-applied challenge, any such errors were harmless.

No. 23-60621

The Second Amendment guarantees that "the right of the people to keep and bear Arms[] shall not be infringed." U.S. CONST. amend. II. That right, however, "is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). "[H]istory and tradition support Congress's power to strip certain groups of that right." *United States v. Diaz*, 116 F.4th 458, 466 (5th Cir. 2024) (quoting *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019) (Barrett, J., dissenting)), *petition for cert. filed* (U.S. Feb. 24, 2025) (No. 24-6625); *see also Bruen*, 597 U.S. at 80 (Kavanaugh, J., concurring) ("Properly interpreted, the Second Amendment allows a 'variety' of gun regulations." (quoting *Heller*, 554 U.S. at 636)).

In *Bruen*, the Supreme Court announced a two-step framework for analyzing whether a particular firearm regulation is consistent with the Second Amendment. 597 U.S. at 17. First, the Second Amendment's plain text must cover the defendant's conduct, in which case the Constitution presumptively protects that conduct. *Id.* at 24. Second, if the defendant's actions are covered, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 49 n.10 (1961)).

As to the first inquiry, Schnur is unequivocally among "the people" protected by the Second Amendment. *Diaz*, 116 F.4th at 466. And, as this court has held, "[t]he plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1)." *Id.* at 467 (citing *United States v. Rahimi*, 602 U.S. 680, 708 (2024) (Gorsuch, J., concurring)). Thus, the burden now rests with the Government to show that regulating Schnur's possession of a firearm is "consistent with the Nation's historical tradition" of disarming

4

someone with a criminal history analogous to his. *Bruen*, 597 U.S. at 24; *accord Diaz*, 116 F.4th at 467.

## A.    Aggravated Battery

In assessing Schnur's criminal history under § 922(g)(1), this court "may consider prior convictions that are 'punishable by imprisonment for a term exceeding one year.'" *Diaz*, 116 F.4th at 467 (quoting 18 U.S.C. § 922(g)(1)).    Among Schnur's predicate felonies is his prior Florida conviction for aggravated battery causing great bodily injury.  Schnur was charged with this offense after he brutally attacked the victim, kicking and punching the man while he was on the ground before stealing the man's cell phone and leaving the scene.  Witnesses observed Schnur holding a taser in his hand at the time of the attack.  Officers were dispatched to a local hospital emergency department where they observed that the victim's eyes were swollen shut, his eyes, nose, and mouth were bloodied, and he sustained a deep laceration above his right eye that required stitches.  Schnur was eventually detained and charged with aggravated battery, in addition to possession of a weapon (taser) by a convicted felon, burglary of a dwelling structure or conveyance while armed, and petit theft.  He later pled guilty to, and was sentenced for, aggravated battery with great bodily harm and a lesser included offense of improper exhibition of a firearm as part of a plea agreement.  The burglary charge and petit theft charges were nolle prossed.

The Government points to our decision in *United States v. Bullock* for its holding that "[t]he historical record demonstrates 'that legislatures have the power to prohibit dangerous people from possessing guns.'"  123 F.4th 183, 185 (5th Cir. 2024) (per curiam) (quoting *Kanter*, 919 F.3d at 451 (Barrett, J., dissenting)) (citing *Folajtar v. Att'y Gen.*, 980 F.3d 897, 912 (3d Cir. 2020) (Bibas, J., dissenting) ("The historical touchstone is danger[.]")).  In that case, the defendant, Jessie Bullock, had previously been convicted of

aggravated assault and manslaughter. *Id.* at 184. Bullock was then arrested and indicted on one count of possession of a firearm by a convicted felon pursuant to § 922(g)(1). *Id.* He moved to dismiss the indictment, raising an as-applied challenge. *Id.* The district court granted Bullock's motion and dismissed the indictment with prejudice. *Id.*

A panel of this court reversed, concluding that based on Bullock's history of "dangerous and violent crimes," he could be constitutionally dispossessed of a firearm under § 922(g)(1). *Id.* at 185. The panel drew insight from the Supreme Court's decision in *United States v. Rahimi*, which involved a facial challenge to 18 U.S.C. § 922(g)(8)'s prohibition of firearm possession by those subject to a domestic violence restraining order. *Id.* (citing *Rahimi*, 602 U.S. at 697). In *Rahimi*, the Court held that § 922(g)(8) "fits comfortably" within this nation's tradition of "preventing individuals who threaten physical harm to others from misusing firearms." 602 U.S. at 690. The Court based its holding in part on the Founding-era "going armed" laws used to "punish[] those who had menaced others with firearms . . . with 'forfeiture of arms and imprisonment,'" *id.* at 697 (cleaned up) (quoting 4 W. BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 149 (1769)), which the Court determined were sufficient historical analogues to support § 922(g)(8)'s constitutionality, *id.* at 693–701. These analogues, the Court explained, "confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 698.

Relying upon the Supreme Court's reasoning, the *Bullock* panel determined that Bullock's "violent conduct" was "'relevantly similar' to, and arguably more dangerous than, the 'prototypical affray [which] involved fighting in public,' the precursor to the 'going armed' laws punishable by arms forfeiture." 123 F.4th at 185 (alteration in original) (quoting *Rahimi*, 602 U.S. at 697). "And the justification behind going armed laws, to

No. 23-60621

'mitigate demonstrated threats of physical violence,' support[ed] a tradition of disarming individuals like Bullock pursuant to § 922(g)(1), whose underlying convictions stemmed from the threat and commission of violence with a firearm." *Id.* (quoting *Rahimi*, 602 U.S. at 697) (citing *Diaz*, 116 F.4th at 470 n.5).

Another recent decision of this court, *United States v. Isaac*, is relevant here. No. 24-50112, 2024 WL 4835243 (5th Cir. Nov. 20, 2024) (per curiam) (unpublished). There, the panel denied an as-applied challenge brought by a defendant, David Isaac, whose predicate offense was aggravated assault with a deadly weapon.[2] *Id.* at *1. The *Isaac* panel emphasized that "[f]rom the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others." *Id.* (quoting *Rahimi*, 602 U.S. at 693). And because "Isaac previously misused a firearm in an attempt to harm another[,]" the panel held that "[a] ban on his ability to possess a firearm . . . fit[] easily within our Nation's historical tradition of firearm regulation." *Id.* Moreover, noting our holding in *United States v. Diaz* that "someone convicted of 'car theft' could be constitutionally dispossessed of his firearm," the panel concluded that, "[a] *fortiori*, someone convicted of aggravated assault with a deadly weapon can be constitutionally dispossessed of a firearm." *Id.* (citing *Diaz*, 116 F.4th at 467, 471–72).

In light of *Bullock* and *Isaac*, our caselaw suggests that there are historical analogues demonstrating our Nation's longstanding tradition of disarming persons with a violent criminal history analogous to Schnur's. *See Bullock*, 123 F.4th at 185; *Isaac*, 2024 WL 4835243, at *1; *cf. Diaz*, 116 F.4th

---

[2] Like Schnur's 2016 aggravated battery conviction, Isaac's predicate offense was classified as a "crime of violence" as defined by U.S.S.G. § 4B1.2(a).

at 471 n.5 (noting that the justification behind going armed laws was "to mitigate demonstrated threats of physical violence[,]" and indicating that this justification may support a tradition of disarming a person "whose underlying conviction[] . . . inherently involve[s] a threat of violence"). "Historically, we have disarmed felons for several reasons[,]" *United States v. Contreras*, 125 F.4th 725, 733 (5th Cir. 2025), including when an individual is deemed a threat to public safety and the orderly functioning of society. *See Bullock*, 123 F.4th at 185; *see also Range v. Att'y Gen.*, 69 F.4th 96, 111 (3d Cir. 2023) (en banc) (Ambro, J., concurring, joined by Greenaway, Jr., & Montgomery-Reeves, JJ.) (explaining that "[c]ertain regulations contemporaneous with the Fourteenth Amendment's ratification reaffirm the familiar desire to keep arms from those perceived to threaten the orderly functioning of society"), *vacated sub nom. Garland v. Range*, 144 S. Ct. 2706 (2024) (mem.), *remanded to* 124 F.4th 218 (3d Cir. 2024) (en banc); *United States v. Williams*, 113 F.4th 637, 663 (6th Cir. 2024) ("The history reveals that legislatures may disarm groups of people, like felons, whom the legislature believes to be dangerous."). And "[t]here can be no doubt that" Schnur's conviction for aggravated battery causing great bodily injury "constitute[s] [a] dangerous and violent crime[]."[3] *Bullock*, 123 F.4th at 185 (citing *Binderup v. Att'y Gen.*, 836 F.3d 336, 374–75 (3d Cir. 2016) (Hardiman, J., concurring in part and concurring in the judgments)); *see also*

---

[3] Florida's aggravated assault statute satisfies the "crime of violence" or "violent felony" definition announced by the Supreme Court in *Borden v. United States*, 593 U.S. 420 (2021). *See Borden*, 593 U.S. at 424 ("An offense qualifies as a violent felony under that clause if it 'has as an element the use, attempted use, or threatened use of physical force against the person of another.'" (quoting 18 U.S.C. § 924(e)(2)(B)(i))); *id.* at 432 (holding that the clause covers only purposeful and knowing acts, not reckless conduct); *see also* FLA. STAT. § 784.045(1)(a)(1) (defining the offense of aggravated battery to occur when a person, "in committing battery . . . [i]ntentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement").

*Williams*, 113 F.4th at 658 ("[T]here is little debate that violent crimes are at least strong evidence that an individual is dangerous, if not totally dispositive on the question.").

While the predicate aggravated assault convictions in *Bullock* and *Isaac* involved the use of firearms, whereas Schnur's aggravated battery offense did not,[4] the underlying reasoning of these cases remains applicable. Schnur's felony conviction for a "crime of violence" indicates that he poses a threat to public safety and the orderly functioning of society. The regulation of such person's ability to possess a firearm "is consistent with this Nation's historical tradition of firearm regulation" and punishment of people who have been convicted of violent offenses. *Bruen*, 597 U.S. at 33–34; *Bullock*, 123 F.4th at 185; *see also Williams*, 113 F.4th at 661–62 ("History shows that governments may . . . disarm people it believes are dangerous.").

Moreover, like Bullock, Schnur's violent aggravated battery conviction is analogous to, "and arguably more dangerous than, the 'prototypical affray [which] involved fighting in public,' the precursor to the 'going armed' laws punishable by arms forfeiture." *Bullock*, 123 F.4th at 185 (alteration in original) (quoting *Rahimi*, 602 U.S. at 697). These affray and going armed laws were intended to "mitigate demonstrated threats of physical violence" similar to that displayed by Schnur when he perpetrated the aggravated battery offense. *Id.* (quoting *Rahimi*, 602 U.S. at 697) (citing *Diaz*, 116 F.4th at 470 n.5). This "supports a tradition of disarming individuals like [Schnur] pursuant to § 922(g)(1), whose underlying conviction stemmed from the threat and commission of violence." *Id.* And, employing the same argument raised in *Isaac*, because this court has found that a person convicted of car theft may be constitutionally dispossessed of

---

[4] Schnur did, however, brandish a taser.

his firearm, *a fortiori*, Schnur, who was convicted of aggravated battery, can be constitutionally dispossessed of a firearm as well. *See Isaac*, 2024 WL 4835243, at *1 (citing *Diaz*, 116 F.4th at 467, 471–72).

Accordingly, we hold that a ban on Schnur's ability to possess a firearm pursuant to § 922(g)(1) passes constitutional muster.

## B.    ROBBERY & BURGLARY

Schnur's 1994 and 1996 convictions for robbery and burglary, respectively, lend further support to the constitutionality of § 922(g)(1) as applied to Schnur.[5] In *Diaz*, we discussed several colonial-era laws targeting theft and punishing it as a felony offense. 116 F.4th at 468–69. We held that these historical precursors established that "our country has a historical tradition of severely punishing people . . . who have been convicted of theft." *Id.* Because theft was a felony at the Founding and "would have led to capital punishment or estate forfeiture" at that time, we reasoned that disarming the defendant who had been convicted of "car theft" fits within our Nation's tradition of regulating firearms. *Id.* at 469–70. Based on Schnur's two theft-related felony convictions, *Diaz* forecloses Schnur's as-applied challenge. *See United States v. Collette*, No. 22-51062, 2024 WL 4457462, at *2 (5th Cir. Oct. 10, 2024) (per curiam) (unpublished) (applying *Diaz* to foreclose as-applied challenge brought by defendant whose predicate felony was theft); *United States v. Charles*, No. 23-50131, 2025 WL 416092, at *1 (5th Cir. Feb. 6, 2025) (per curiam) (unpublished) (same); *see also United States v. Quiroz*, 125 F.4th 713, 724 (5th Cir. 2025) (discussing *Diaz*, in the context of 18 U.S.C. § 922(n), and noting that "founding-era burglary laws 'impose a

---

[5] We note that Schnur's robbery conviction might also fall under the history and tradition of disarming violent criminals, discussed *supra*, in the context of his aggravated battery predicate offense. The conduct underlying Schnur's robbery conviction involved the brandishing of a beer bottle and use of force to take a wallet and its contents from the victim. Schnur was initially charged in connection with this incident with armed robbery, but he later pleaded guilty to simple robbery.

No. 23-60621

comparable burden on the right of armed self-defense'" (quoting *Diaz*, 116 F.4th at 467)).

## IV.

Accordingly, we AFFIRM the district court's judgment of conviction and ruling that 18 U.S.C. § 922(g)(1) is constitutional under the Second Amendment as applied to Schnur.

No. 23-60621

Stephen A. Higginson, *Circuit Judge*, concurring:

I concur appreciatively in Judge Douglas's opinion, which faithfully and deftly applies our precedent, notably *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024), and *United States v. Bullock*, 123 F.4th 183 (5th Cir. 2024).

I write separately only to express my apprehension if *Diaz* is read to require that, in all § 922(g)(1) cases, there must be a *Bruen*-style historical analysis for each underlying felony predicate. *Cf. Lewis v. United States*, 445 U.S. 55, 67 (1980) (precluding collateral attack on prior conviction in defense of a prosecution under a forerunner to § 922(g)(1)). *But see United States v. Williams*, 113 F.4th 637, 663 (6th Cir. 2024) (apparently allowing "fact-specific dangerous determinations" drawn from "a defendant's entire criminal record" to support a § 922(g)(1) conviction).

Instead, I favor the approach taken by other courts that is deferential, until instructed otherwise, to the "assurances by the Supreme Court, and the history that supports them," permitting legislative prohibitions on the possession of firearms by felons. *United States v. Jackson*, 110 F.4th 1120, 1125 (8th Cir. 2024); *see also, e.g.*, *United States v. Langston*, 110 F.4th 408, 420 (1st Cir.), *cert. denied*, 145 S. Ct. 581 (2024) (mem.); *United States v. Hunt*, 123 F.4th 697, 704 (4th Cir. 2024), *petition for cert. filed*, No. 24-6818 (U.S. Mar. 20, 2025); *Williams*, 113 F.4th at 665 (Davis, J., concurring in the judgment); *Vincent v. Bondi*, 127 F.4th 1263, 1265–66 (10th Cir. 2025); *United States v. Hester*, No. 23-11938, 2024 WL 4100901, at *1 (11th Cir. Sept. 6, 2024) (per curiam) (unpublished), *cert. denied*, No. 24-6301, 2025 WL 581791 (U.S. Feb. 24, 2025) (mem.).

Such deference to repeated Supreme Court assertions is consistent with long-standing law and provides clear direction to Americans with felony convictions. If we choose not to defer, we must ensure Americans are given

No. 23-60621

particularized notice.    To that end, we must give district courts clear instructions as to how, when, and by whom the determination that a felony predicate qualifies for § 922(g)(1) must be made.  Still, I doubt this can be done without developing an analytical regime to assess dangerousness, either from a defendant's prior convictions or from the charged offense.