# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 1, 2025

Lyle W. Cayce
Clerk

No. 23-30218

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

JARON MCCREE,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:22-CR-88-1

_____

Before JONES and GRAVES, *Circuit Judges*, and RODRIGUEZ, *District Judge.*[†]

FERNANDO RODRIGUEZ, JR., *District Judge*:

Jaron McCree pled guilty to knowingly possessing a firearm after being convicted of a felony offense, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court sentenced him to 70 months incarceration followed by three years of supervised release.

---

[†] United States District Judge for the Southern District of Texas, sitting by designation.

No. 23-30218

On appeal, McCree advances facial and as applied constitutional challenges to his conviction under § 922(g)(1). And he argues that the district court erred by applying a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B), based on a finding that McCree possessed the firearm in connection with another felony offense.

This court concludes that the governing law precludes McCree's constitutional challenges, and that the district court did not commit clear error by applying the enhancement under § 2K2.1(b)(6)(B).

I.

In February 2022, detectives set out to arrest McCree based on an outstanding warrant. They observed McCree near a corner store, and when a detective began to approach him, McCree noticed the officer and fled, discarding a firearm into a bush as he ran. The officers apprehended McCree and then recovered the discarded firearm, a 9mm Glock model 17. In addition, when the officers conducted a search of McCree incident to the arrest, they found five rocks of crack cocaine and $94 on his person.

At the time of his arrest, McCree knew that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year. His criminal history included five felony convictions under Louisiana law: attempted possession of a firearm by a convicted felon (LA-R.S. 14:(27)95.1); aggravated flight from an officer (LA-R.S. 14:108.1); possession of heroin (LA-R.S. 40:966(C)); possession of a firearm by a convicted felon (LA-R.S. 14:95.1); and aggravated battery (LA-R.S. 14:34).

McCree pled guilty to knowingly possessing a firearm after being convicted of a felony offense, in violation of §§ 922(g)(1) and 924(a)(2).

The Presentence Investigation Report applied a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B), based on McCree possessing

the firearm while in possession of crack cocaine. McCree objected to the enhancement on the grounds that no evidence supported its application.

After McCree filed his objection, the Probation Office submitted an Addendum contending that McCree possessed the crack cocaine with the intent to distribute it, and simultaneously possessed the firearm to protect the narcotics and the proceeds from their sale. The Addendum noted that at the time of the incident, McCree had not possessed a crack pack, heating element, pipe-pushing tool, or any other items typically associated with the mere personal use of drugs.

At the sentencing hearing, the district court heard argument on the objection, posing various questions regarding relevant facts and caselaw, in particular the case of *United States v. Jeffries*, 587 F.3d 690, 695 (5th Cir. 2009). The district court then overruled McCree's objection, making express findings and explaining the basis of those findings:

> In my opinion, the *Jeffries* case from the Fifth Circuit is the most important case to me in terms of the guidance that a sentencing judge has to consider in determining whether or not a guideline enhancement is correct or not. And, again, these guidelines are discretionary. I'm not bound to pronounce a guideline sentence.
>
> But *Jeffries* involved a single rock of crack cocaine and a gun in the same vehicle that the crack cocaine was in. This case involves five rocks of crack cocaine, a gun that was in the direct possession of Mr. McCree while he was trying to flee from police officers who he saw and he was running away from to avoid arrest for a serious offense.
>
> This wasn't a mere accident that the gun and the drugs were together on his direct person. It wasn't an accident that he fled the scene, attempted to discard the loaded firearm that was in his possession with the five rocks of crack cocaine.

From my reading of the Fifth Circuit cases, as well as the *Jeffries* case, and even the one that's cited today by counsel, this wasn't a mere accident, it wasn't coincidental, it was all done to facilitate that gun possession, it was all done to facilitate the possession of those five rocks of crack cocaine, an activity that the guideline enhancement has made applicable.

The district court adopted the PSR, which calculated a Total Offense Level of 21 and a Criminal History Category of V, resulting in a guideline range of 70 to 87 months. The court sentenced McCree to 70 months with three years of supervised release.

Absent the challenged enhancement, McCree would have a Total Offense Level of 17, with a resulting guideline range of 46 to 57 months.

McCree timely appealed. In his opening Appellant's brief, McCree challenged the district court's application of the sentencing enhancement and, for the first time, argued that § 922(g)(1) facially violates the Second Amendment. Before the government filed its responsive brief, this court granted McCree's unopposed request to stay proceedings pending the court's decision in *United States v. Collette*, No. 22-51062, 2024 WL 4457462 (5th Cir. Oct. 10, 2024).

This court then decided *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024), which rejected facial and as-applied challenges to § 922(g)(1) under the Second Amendment. McCree requested and this court granted him leave to file a Supplemental Brief in light of *Diaz*. In his Supplemental Brief, in addition to re-urging his facial challenge to § 922(g)(1) and his challenge to the sentencing enhancement, McCree also asserted an as-applied challenge to § 922(g)(1) under the Second Amendment.

II.

This court has foreclosed facial challenges to § 922(g)(1) as unconstitutional under the Second Amendment. *See Diaz*, 116 F.4th at 471–72.

As to McCree's as-applied challenge, the Government raises the threshold questions of whether McCree waived the issue by pleading guilty, and furthermore forfeited the matter by failing to include it within his opening appellant's brief. The court rejects both contentions.

This court has discretion to consider arguments otherwise forfeited when intervening decisions have "provided an important clarification in the law" and a refusal to consider a new claim "would result in perpetuating incorrect law." *United States v. Zuniga*, 860 F.3d 276 (5th Cir. 2017). We granted leave to McCree to file a Supplemental Brief in light of *Rahimi* and *Diaz*, the latter of which included an as-applied challenge under § 922(g). Between McCree's opening Appellant's Brief and the Supplemental Brief, this court also decided *United States v. Connelly*, 117 F.4th 269 (5th Cir. 2024), which affirmed the dismissal of an indicted count under § 922(g)(3) based on an as-applied challenge under the Second Amendment. These decisions clarified the law regarding as-applied challenges to § 922(g). And as reasonable minds may disagree regarding McCree's challenge, we deem consideration of the issue appropriate. Still, we review for plain error. *See United States v. Jones*, 88 F.4th 571, 572 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 1081 (2024). And under that standard, in the context of as-applied challenges, the absence of binding authority typically defeats the defendant's argument. *Id.* at 573–74.

At the time of his arrest, McCree had state felony convictions under Louisiana law for attempted possession of a firearm by a convicted felon,

aggravated flight from an officer, possession of heroin, possession of a firearm by a convicted felon, and aggravated battery. McCree does not identify any binding authority establishing that these convictions could not form the basis for a conviction under § 922(g)(1). As a result, he has not overcome the stringent standard under plain error review. *See United States v. Cisneros*, 130 F.4th 472, 477 (5th Cir. 2025).

Moreover, this court recently affirmed a conviction under § 922(g)(1) as to a defendant whose predicate offenses included aggravated battery causing bodily injury under Florida law. *See United States v. Schnur*, 132 F.4th 863, 867–70 (5th Cir. 2025). The court applied the two-step framework that the Supreme Court has established for analyzing whether a particular firearm regulation is consistent with the Second Amendment. *Id.* at 867 (citing *New York Rifle and Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022)). "First, the Second Amendment's plain text must cover the defendant's conduct, in which case the Constitution presumptively protects that conduct." *Id.* (citing *Bruen*, 597 U.S. at 24). "Second, if the defendant's actions are covered, '[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.'" *Id.* (quoting *Bruen*, 597 U.S. at 24).

In *Schnur*, this court focused on the defendant's conviction for aggravated battery under Florida law. After conducting a review of the Nation's historical tradition of firearm regulation, the court concluded that "our caselaw suggests that there are historical analogues demonstrating our Nation's longstanding tradition of disarming persons with a violent criminal history." *Id.* at 869. The court further explained that "Schnur's felony conviction for a 'crime of violence' indicates that he poses a threat to public safety and the orderly functioning of society. The regulation of such person's ability to possess a firearm 'is consistent with this Nation's historical

tradition of firearm regulation' and punishment of people who have been convicted of violent offenses." *Id.* at 870 (internal citations omitted).

Applying the same analysis as in *Schnur*, McCree's conviction for aggravated battery under Louisiana law also serves as a constitutionally-adequate predicate for the § 922(g)(1) conviction. The crime qualifies as a "crime of violence," which includes "an offense that has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another, and that, by its very nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense or an offense that involves the possession or use of a dangerous weapon." LA. REV. STAT. §§ 14:2(B). As in *Schnur*, McCree's conviction for aggravated battery "indicates that he poses a threat to public safety and the orderly functioning of society." *Schnur*, 132 F.4th at 870. "The regulation of such person's ability to possess a firearm is consistent with this Nation's historical tradition of firearm regulation and punishment of people who have been convicted of violent offenses." *Id.* (internal quotation marks omitted).[1]

---

[1] The dissent argues that *Schnur* does not control because we do not know whether McCree, when committing aggravated battery, injured any person or merely threatened to do so. But neither *Schnur* nor any other authority dictates that a predicate offense must have involved actual injury to permit the deprivation of Second Amendment rights. As this court explained in *Schnur*, the Supreme Court has confirmed "that § 922(g)(8) 'fits comfortably' within this nation's tradition of 'preventing individuals who *threaten* physical harm to others from misusing firearms.'" *Schnur*, 132 F.4th at 868 (quoting *United States v. Rahimi*, 602 U.S. 680, 690 (2024)) (emphasis added); *see also Rahimi*, 602 U.S. at 693 ("From the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm *or menace* others.") (emphasis added); *Schnur*, 132 F.4th 869 ("An offense qualifies as a violent felony under [18 U.S.C. § 924(e)(2)(B)(i)] if it 'has as an element the use, attempted use, or *threatened use* of physical force against the person of another.'") (quoting *Borden v. United States*, 593 U.S. 420, 424 (2021)) (emphasis added).

No. 23-30218

For these reasons, McCree's as-applied challenge also fails.

III.

When a defendant appeals the application of a sentencing enhancement, "[t]his court reviews a district court's interpretation or application of the guidelines *de novo* and its factual findings for clear error." *United States v. Eaden*, 914 F.3d 1004, 1007 (5th Cir. 2019). "The district court's determination of the relationship between [a firearm] and another offense is most usually a factual finding[.]" *See id.* "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." *Jeffries*, 587 F.3d at 692 (internal citation omitted).

McCree challenges the sentencing enhancement that the district court applied under § 2K2.1(b)(6)(B), which authorizes a four-level increase if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." The enhancement automatically applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia [because] the presence of the firearm has the potential of facilitating" these types of offenses. U.S.S.G. § 2K2.1 cmt. n. 14(B)(ii). Otherwise, the enhancement applies only "if the firearm . . . facilitated, or had the potential of facilitating, another felony offense[.]" U.S.S.G. § 2K2.1 cmt. n. 14(A). As to McCree, the district court found that McCree's possession of a firearm facilitated his possession of crack cocaine.

McCree principally relies on *Jeffries* to argue that "the simultaneous possession of a small quantity of drugs and a gun[,]" by itself, does not amount to facilitation for purposes of the § 2K2.1 enhancement. *Jeffries*, 587 F.3d at 695. As this court has explained, "outside the context of drug trafficking, 'no presumption is made' that a firearm facilitated possession of other contraband just because the two items are in close proximity and both

8

are illegally possessed." *United States v. Henry*, 119 F.4th 429, 436 (5th Cir. 2024) (quoting *Jeffries*, 587 F.3d at 693).

The United States distinguishes *Jeffries* and *Henry*, arguing that the facts of this case present more than mere proximity of a gun to drugs. The United States argues that McCree's illegitimate possession of a loaded gun with an extended magazine, his flight when law enforcement approached to arrest him, his discarding of the gun as he fled, his simultaneous possession of the gun and the crack cocaine, and his statements at sentencing of how important using crack was to him, all indicate that the gun had at least the potential to embolden McCree's possession of drugs.

We recognize that the record in this case bears resemblance to the records in past decisions in which this court has found the § 2K2.1(b)(6) enhancement inapplicable. *See, e.g.*, *Henry*, 119 F.4th at 429; *Jeffries*, 587 F.3d at 690; *see also United States v. Ratcliff*, No. 24-30192, 2025 WL 618105 (5th Cir. Feb. 26, 2025) (per curiam) (unpublished); *United States v. Garza*, No. 22-20338, 2023 WL 3918993 (5th Cir. June 9, 2023) (per curiam) (unpublished); *United States v. Ledesma*, 750 F. App'x 344 (5th Cir. 2018) (unpublished); *United States v. Pimpton*, 589 F. App'x 692 (5th Cir. 2014) (per curiam) (unpublished).

Still, this court "may affirm on any ground supported by the record [] even if it was not reached by the district court." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). And for purposes of the sentencing enhancement, "another felony offense" need not be indicted conduct. U.S.S.G. § 2K2.1 cmt. n. 14(C), (E). Here, irrespective of whether McCree's possession of a firearm facilitated his possession of the crack

cocaine, the record renders amply plausible that McCree possessed the firearm in connection with his trafficking of drugs.

To engage in the federal offense of drug trafficking, an individual must knowingly possess a controlled substance with the intent to distribute it. *See United States v. Williamson*, 533 F.3d 269, 277 (5th Cir. 2008). The intent element may be proven by "mere possession of a quantity of drugs inconsistent with personal use." *Id.* (internal quotation marks and footnote omitted). McCree possessed a firearm with an extended magazine while also possessing five rocks of crack cocaine, a quantity of drugs that the district court highlighted, and that is greater than the personal-use amount at issue in *Jeffries*. McCree stood on a street corner with no paraphernalia associated with the personal use of crack cocaine, such as a crack pack, heating element, or pipe-pushing tool. And when he observed an officer approaching him, he immediately fled. Based on this record, the district court could have plausibly found that McCree intended to sell the crack cocaine, a finding that would have automatically triggered the application of § 2K2.1(b)(6).[2] *See* U.S.S.G. § 2K2.1 cmt. n. 14(B)(ii). And given that the record supports such a finding, remand is not required to permit the district court to make it. *Cf. United States v. Orozco*, 786 F. App'x 17, 19 (5th Cir. 2019) (per curiam) (unpublished).

IV.

As a result, we AFFIRM McCree's conviction and sentence.

---

[2] The dissent details the evidence supporting a contrary conclusion. The ultimate question, however, is not whether this court would reach the same decision as the district court, but whether the record contains evidence rendering plausible the application of the sentencing enhancement. It does, warranting affirmance.

No. 23-30218

JAMES E. GRAVES, JR., *Circuit Judge*, dissenting in part.

I agree with the majority that the issue of whether 18 U.S.C. § 922(g)(1) is facially unconstitutional under the Second Amendment is foreclosed by *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024). However, I disagree with the majority's conclusion that Jaron McCree's as-applied challenge is foreclosed. I also disagree with the majority's affirmance of the sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B). Thus, I respectfully dissent in part.

Law enforcement officials (LEO) in New Orleans obtained a warrant to arrest Jaron McCree for aggravated assault in 2022 based on an incident that allegedly happened on "an unknown date." An unnamed woman reported that a blue SUV drove past her house a couple of times. Then later while driving on I-10 with her sister, the woman said the same SUV was behind her. The woman pulled into the other lane so the SUV could pass, and she took a picture of the tag. The woman claimed that, as the driver passed, he pointed a "black semi-automatic firearm" out the driver's side window. The PSR says that "LEO were able to identify the vehicle and locate the registered owner." But the PSR does not divulge the identity of the registered owner. Following an investigation and at some point "thereafter," McCree was driving the vehicle, so a warrant was obtained for his arrest.[1] On February 15, 2022, McCree was seen standing near a corner store on St. Louis Street.[2] LEO chased him on foot and observed him discard a "Glock model 17, 9 mm" handgun into the bushes. After he was arrested, LEO found five rocks of crack in his pants pocket.

---

[1] There is no indication in the record that the unknown woman identified McCree as the driver of the blue SUV.

[2] The store was approximately four blocks from McCree's residence.

McCree's predicate felony was a juvenile adjudication from May 14, 2014, for aggravated battery in violation of LA-R.S. 14:34.[3] The PSR does not include the juvenile adjudication in its list of crimes when it sets out that, "[p]rior to possessing the firearm, the defendant knew [sic] had previously been convicted of a crime punishable by imprisonment for a term exceeding one year." The Factual Basis also does not include the juvenile adjudication. But the PSR does include the juvenile adjudication in McCree's criminal history, allocating 3 points under U.S.S.G. § 4A1.1(a). The PSR also states that "[t]he circumstances of this case were unavailable."

In other words, McCree's original felony was a juvenile offense for aggravated battery for which we do not know the circumstances. As set out by the majority, McCree's very next conviction was possession of a firearm by a convicted felon, then another for attempted possession of a firearm by a convicted felon, and now another for possession of a firearm by a convicted felon stemming from an alleged incident with an unknown person on an unknown date and a blue SUV owned by someone else that he was driving at some point thereafter.[4] His other offenses have been running from the police and possessing drugs.

In the case before this court, McCree pleaded guilty to knowingly possessing a firearm after being convicted of a felony offense, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The PSR applied a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B), based on McCree possessing a firearm while in possession of crack. McCree objected to the enhancement.

_____

[3] The "date of referral" for the offense was listed as "06/07/11" with a notation "(Age 16)."

[4] McCree was on foot the day of his arrest, and there was no mention of the blue SUV.

No. 23-30218

The district court overruled his objection, adopted the PSR, and sentenced him to 70 months with three years of supervised release. McCree appealed.

*I. As-applied challenge to § 922(g)(1)*

McCree asserts that § 922(g)(1) is unconstitutional as applied to him. The majority concludes that McCree's challenge fails due to his aggravated battery conviction under *United States v. Schnur*, 132 F.4th 863, 867-70 (5th Cir. 2025). I disagree that *Schnur* forecloses McCree's as-applied challenge because McCree was not convicted of "aggravated battery causing great bodily injury," and we do not know any of the facts pertaining to his conviction. In *Schnur*, this court said:

> Among Schnur's predicate felonies is his prior Florida conviction for aggravated battery causing great bodily injury. Schnur was charged with this offense after he brutally attacked the victim, kicking and punching the man while he was on the ground before stealing the man's cell phone and leaving the scene. Witnesses observed Schnur holding a taser in his hand at the time of the attack. Officers were dispatched to a local hospital emergency department where they observed that the victim's eyes were swollen shut, his eyes, nose, and mouth were bloodied, and he sustained a deep laceration above his right eye that required stitches. Schnur was eventually detained and charged with aggravated battery, in addition to possession of a weapon (taser) by a convicted felon, burglary of a dwelling structure or conveyance while armed, and petit theft. He later pled guilty to, and was sentenced for, aggravated battery with great bodily harm and a lesser included offense of improper exhibition of a firearm as part of a plea agreement. The burglary charge and petit theft charges were nolle prossed.

132 F.4th at 867-68. This court then relied on caselaw to determine that the regulation of Schnur's ability to possess a gun was consistent with historical firearm regulation of people with a violent criminal history. *Id.* at 869-70.

13

No. 23-30218

We know none of the circumstances of McCree's juvenile adjudication for aggravated battery, and there is no requirement of injury under La. Rev. Stat. § 14.34.  Thus, there is no basis for concluding that there was great bodily injury as discussed by this court in *Schnur*.  The majority cites only the Louisiana statutory definition for a "crime of violence."  La. Rev. Stat. § 14:2(B).  However, that definition includes even a threat and does not require any bodily injury.[5]  The majority cites no authority for the proposition that we determine whether "there are historical analogues demonstrating our Nation's longstanding tradition of disarming persons with a violent criminal history" by simply looking to each state's definition for a

_____

[5] Notwithstanding the fact that *Schnur* does not foreclose McCree's as-applied challenge, as discussed herein, I briefly touch on the majority's additional argument that a "threat" would be sufficient.  The majority emphasizes the word "threaten" in a quote from *Schnur*.  *See Schnur*, 132 F.4th at 868.  However, the use of "threaten" in that sentence pertains to some future credible threat "from misusing a firearm," not to whether the prior offense involved only a threat.  *Id*. at 868; *see also United States v. Rahimi*, 602 U.S. 680, 690 (2024).  In *Rahimi*, the Supreme Court said:

> When a restraining order contains a finding that an individual poses a credible threat to the physical safety of an intimate partner, that individual may—consistent with the Second Amendment—be banned from possessing firearms while the order is in effect.  Since the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms.

*Id*.

The same holds true for the majority's additional quotes from *Schnur* with emphasis on "menace" or "threatened."  *See id*. at 689-90.  We have no evidence that McCree ever used a firearm to "menace" or "threaten" anyone.  We also have no "restraining order" or anything else containing a finding to indicate that McCree "poses a credible threat to the physical safety" of anyone from "misusing a firearm."  Moreover, this court has no basis for making such a finding.

crime of violence. *Schnur*, 132 F.4th at 869. That is also not what this court did in *Schnur*, as stated previously.[6]

The majority concedes there is no evidence here comparable to *Schnur* but concludes that "neither *Schnur* nor any other authority dictates that a predicate offense must have involved actual injury to permit the deprivation of Second Amendment rights." But *this* predicate offense does. As quoted above, the predicate felony in *Schnur* was a "Florida conviction for aggravated battery causing great bodily injury," as the majority concedes. *Id.* at 867. That is how we know that McCree's predicate offense must also have caused "great bodily injury" for *Schnur* to establish that § 922(g)(1) is constitutional as applied to McCree. In Louisiana, the equivalent statute is "second degree battery," which applies "when the offender intentionally inflicts serious bodily injury." La. Rev. Stat. § 14:34.1. McCree was not convicted of "second degree battery." We have no evidence that McCree committed "aggravated battery causing great bodily injury." Further, nothing in the PSR, the factual basis or the majority opinion establishes that McCree "poses a threat to public safety and the orderly functioning of society." *Schnur*, 132 F.4th at 870. There is no evidence that McCree was convicted of a "dangerous and violent crime" or that he has a "violent criminal history." While that evidence existed in *Schnur*, it does not exist here. For these reasons, McCree's conviction does not serve "as a constitutionally-adequate predicate for the § 922(g)(1) conviction" despite

---

[6] I acknowledge that the *Schnur* court noted Florida's definition for "crime of violence" and cited *Borden v. United States*, 593 U.S. 420, 424 (2021), upon which the majority now relies. *Schnur*, 132 F.4th at 869, n.3. But *Borden* involved a sentencing enhancement under the Armed Career Criminal Act and preceded both *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and *Rahimi*. Nothing in *Borden* supports the proposition that this court should merely look to the definition of a "crime of violence" for purposes of a sentencing enhancement and forego any other analysis, much less that required by *Bruen* and its progeny.

the majority's claim to the contrary, and McCree's as-applied challenge is clearly not foreclosed by *Schnur*.[7]

## II. Sentencing enhancement

McCree asserts that the district court clearly erred in applying the sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possessing a firearm "in connection with" another felony offense. The majority concludes that the district court did not err. I disagree.

This court previously decided the similar case of *United States v. Jeffries*, 587 F.3d 690 (5th Cir. 2009). In *Jeffries*, this court vacated the sentence, concluding that the district court erred in applying the § 2K21.1(b)(6) enhancement where a firearm and one rock of crack were found in Vincent Jeffries' car.

As explained in *Jeffries* and stated by the majority, the Application Notes of the Sentencing Guidelines provide that the enhancement automatically applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." 587 F.3d at 692 (quoting § 2K2.1 cmt. n. 14(B)(ii)). For all other felony offenses, including drug possession, the enhancement only applies "if the firearm facilitated, or had the potential of facilitating" the offense. *Id.* at 693 (quoting § 2K2.1 cmt. n. 14(A)) (internal marks omitted).

---

[7] The majority also indicates that any of McCree's other state felony convictions could form the basis for a conviction under §922(g)(1). McCree's juvenile adjudication for aggravated battery had to be the original predicate because his next state conviction was for possession of a firearm by a convicted felon. To the extent that the majority may be suggesting that the juvenile adjudication could not form the basis here, it fails to cite any authority establishing that we are then free to rely on any subsequent convictions obtained as a result of that problematic original predicate.

No. 23-30218

"[O]utside of the context of drug trafficking, 'no presumption is made' that a firearm facilitated possession of other contraband just because the two items are in close proximity and both are illegally possessed." *United States v. Henry*, 119 F.4th 429, 436 (5th Cir. 2024) (quoting *Jeffries*, 587 F.3d at 693). The district court must "explain how the firearm plausibly facilitated" the possession of crack. *Id.* There must be some evidence that McCree is selling or distributing drugs or that he has some other specific reason for protecting the drugs. *Id.* The evidence of facilitation "must be something more than the simultaneous possession of a small quantity of drugs and a gun." *Jeffries*, 587 F.3d at 695. The court then concluded that:

> The facts here are too sparse to support the conclusion that [the defendant's] possession of a gun "emboldened" him to engage in the crime of cocaine possession, *see, e.g., Jenkins*, 566 F.3d at 164; *Smith*, 535 F.3d at 886, or that it served to "protect" such a small amount of drugs, *see, e.g., Jenkins*, 566 F.3d at 164; *United States v. Angel*, 576 F.3d 318, 322 (6th Cir.2009); *United States v. Gambino-Zavala*, 539 F.3d 1221, 1230 (10th Cir.2008).

587 F.3d at 695.

The district court here found that McCree's possession of a firearm facilitated his possession of crack cocaine. The district court relied on the facts that McCree possessed five rocks of crack and a firearm, and he attempted to flee. But the district court failed to explain how possession of the firearm facilitated the possession of the crack. That the firearm could be used to protect the five rocks of crack is not enough to apply the enhancement. *Henry*, 119 F.4th at 436. Further, the district court failed to explain how attempting to flee somehow supported a conclusion that McCree was emboldened to possess the small quantity of crack by possessing the firearm. McCree knew that he could not be in possession of a firearm regardless of whether he possessed anything else. That was a reason to flee.

17

Possessing crack was another reason to flee. But attempting to flee in no way establishes that his possession of the firearm facilitated his possession of five rocks of crack. The record also fails to establish that five rocks of crack is anything other than a small, personal-use quantity.

While the defendant in *Jeffries* did not flee, the defendant in *Henry* fled when an officer approached. *Henry*, 119 F.4th at 431. In that case, which involved the possession of a firearm and a stolen car, the government argued that the defendant used the firearm to protect the valuable stolen car. *Id.* at 436. This court specifically referenced the facts that the defendant "immediately ran, without any attempt to engage with the officer, and dropped the gun" in concluding that the government's theory was not plausible because there was "a lack of evidence to suggest a relationship between the gun and the stolen car aside from proximity. *Id.* 119 F.4th at 436, n.5. The same holds true for McCree.

Further, McCree consistently maintained that he possessed a firearm for his safety because he has "experienced significant gun trauma." He also said he was "fearful for my life" living in New Orleans. "I wasn't using it to harm anyone. I didn't have it to harm anyone, Your Honor. I was just protecting myself."

Also, as in *Jeffries*, McCree's PSR lacked a "critical step—namely, any nexus between the firearm possession and the drug possession." *Id.*, 587 F.3d at 694 & n.9. "[T]he nexus cannot simply be presumed." *Id.*

The PSR simply said: "The defendant possessed a firearm while in possession of cocaine. Therefore, pursuant to USSG 2K2.1(b)(6)(B), since the defendant possessed a firearm in connection with another felony offense, increase by four levels." This is essentially the same as the PSR in *Jeffries* that the court concluded was insufficient. 587 F.3d at 694 & n.9.

Following McCree's objection, the addendum included the following:

> LEO believed, based on the defendant's possession of five crack cocaine pieces relatively equal in size without a crack pack, heating element, pipe-pushing tool, or any other items typically associated with the personal use of crack cocaine, that the defendant possessed the crack cocaine with the intent to distribute and that the firearm was to protect the narcotics and narcotic proceeds.

The LEO's mere belief that the gun was connected fails to establish a nexus, particularly when McCree possessed only a small, personal-use amount of crack in a single baggie not packaged for distribution and a small amount of cash, there is no evidence he ever used a firearm to protect or attempt to protect possession of anything, and he provided legitimate non-nefarious reasons for possessing a firearm. Such a belief without plausible evidence is nothing more than a presumption, and "the nexus cannot simply be presumed." *Jeffries*, 587 F.3d at 694.

Because the record here does not support a plausible finding that McCree's possession of a firearm facilitated or had the potential to facilitate his possession of a small quantity of crack cocaine, I conclude that the district court clearly erred in applying the enhancement. *Id.* at 695.

The majority concedes as much, acknowledging "that the record in this case bears resemblance to the records in previous cases where this court has found the § 2K2.1 enhancement inapplicable." (Citing *Henry*, 119 F.4th 429; *Jeffries*, 587 F.3d 690; *United States v. Ratcliff*, No. 24-30192, 2025 WL 618105 (5th Cir. Feb. 26, 2025) (per curiam) (unpublished); *United States v. Garza*, No. 22-20338, 2023 WL 3918993 (5th Cir. June 9, 2023) (per curiam) (unpublished); *United States v. Ledesma*, 750 F. App'x 344 (5th Cir. 2018) (unpublished); *United States v. Pimpton*, 589 F. App'x 692 (5th Cir. 2014) (per curiam) (unpublished)).

No. 23-30218

The majority then disregards those cases, saying that "irrespective of whether McCree's possession of a firearm facilitated his possession of crack cocaine, the record renders amply plausible that McCree possessed the firearm in connection with his trafficking of drugs."[8] I disagree. In doing so, the majority makes the unsupported determination that McCree possessed a firearm "while also possessing five rocks of crack cocaine, a quantity of drugs that the district court highlighted, and that is greater than the personal-use amount at issue in *Jeffries.*" The mere fact that *Jeffries* involved one rock of crack cocaine in no way establishes that five rocks is greater than a personal-use amount, and the majority cites no authority for such a proposition. Also, the district court simply referenced the quantity in an attempt to distinguish this case from the one rock in *Jeffries* and to find that McCree possessed the gun "to facilitate the *possession* of those five rocks of crack cocaine." (Emphasis added). The district court did not find that McCree was intending to distribute.

The Factual Basis here merely stated: "According to the police report, a search incident to arrest led to the recovery of 5 crack rocks on McCree's person." There is no mention of any drug trafficking, any intent to distribute, or any suggestion that the quantity was more than a personal-use amount. Further, there is no evidence in the record to establish that McCree was distributing drugs or that the quantity he possessed was more than a personal-use amount. But there is significant evidence to contradict such a conclusion.

---

[8] The majority also cites U.S.S.G. § 2K2.1 cmt. n. 14(C), (E) for the proposition that "'another felony offense' need not be indicted conduct." However, nothing in the definition of "another felony offense" allows the majority to ignore precedent or the complete lack of evidence to reach unsupported conclusions.

At sentencing, the district court asked the government: "Is there any reliance from the government that the police officer suspected drug activity by Mr. McCree? Is there anything in the record to show why they had that suspicion?" The government explicitly responded: "There wasn't anything in the record." The government then explained that it was taking that position because McCree did not simultaneously possess paraphernalia, he had $94 in cash, he attempted to flee, "[a]nd, frankly, five crack rocks is more than a *single use* of that substance." (Emphasis added). Importantly, "more than a single use" does not mean more than a personal use; it simply means more than typically would have been smoked at once. The government also acknowledged at sentencing that the five crack rocks were contained in one baggie, as opposed to individual baggies for distribution.

Both the PSR and McCree's testimony at sentencing indicate that he was using crack on a regular basis, and occasionally other drugs, to deal with emotional trauma after his pregnant girlfriend was killed, his brother died, his close friend was killed, and his father died from cancer over just a few years. I disagree with the majority's characterization that McCree offered "statements at sentencing of how important using crack was to him." McCree explained why he started using it but said nothing about how important using it was to him. To the contrary, before McCree's statements, his counsel had already argued that "he has never received drug treatment as part of his sentence. We are specifically requesting that the court adopt probation's recommendation that he do some form of drug treatment." The district court indeed accepted that recommendation. Additionally, McCree explained that he did not use a pipe to consume crack. He testified that "I was not using a pipe. I was crunching it, smashing it, putting it in cigarettes or I would put it in my marijuana." The government offered nothing to dispute that method of consumption, which was acknowledged by a government witness in another case discussed below.

The government also did not offer any evidence at sentencing regarding the size, weight or value of the rocks, how much an addict typically consumes in a given time-period, or anything else to establish that this was somehow more than a personal-use amount. Despite the lack of any such evidence, the majority now concludes that five rocks of crack of unknown size and weight are more than a personal-use amount. Such a determination is unsupported by any legal authority.

The majority cites *United States v. Williamson*, 533 F.3d 269, 277 (5th Cir. 2008), for the proposition that intent to distribute can be proven by "mere possession of a quantity of drugs inconsistent with personal use." But, again, it cites nothing to establish that five rocks of crack are inconsistent with a personal-use amount.

This court has repeatedly set out that a quantity consistent with personal use does not support an inference of distribution, even if the quantity may be indicative of distribution. *See United States v. Hunt*, 129 F.3d 739, 742-44 (5th Cir. 1997). In *Hunt*, this court concluded that 7.998 grams of crack cocaine, a gun, the lack of paraphernalia, and other evidence was insufficient to infer intent to distribute. The 7.998 grams of crack cocaine consisted of one large rock and several smaller rocks. *Id.* at 741. In that case, Hunt also testified that she did not use crack cocaine. *Id.* A detective testified that the cocaine was worth about $200 and was a distributable amount. *Id.* "Furthermore, he stated that each of the smaller rocks would be 'a lot of crack for a crack head' and that the rocks are available in sizes smaller than that size." *Id.* Authorities did not find any "crack pipes" or "smoking devices" with the crack. *Id.* The court recounted that the detective also said the following:

> [I]n his opinion, the tobacco and cigar wrappings they found were evidence of "blunts" being sold out of Hunt's house. He explained that blunts are made by taking the tobacco out of

cigars and replacing it with marijuana and that "primos" are made by adding crack cocaine to the marijuana. He stated that in the area of town where Hunt's house was located, marijuana and crack are usually sold hand in hand, "like a little drug store." On recross, however, he stated that "primos" are one way that cocaine users smoke cocaine.

*Id.*

The court further said:

Although the government introduced testimony that this amount is a distributable amount and that the individual rocks may be larger than those that Detective Rodriguez believes are usually smoked or that Cho, the forensic analyst, usually tests, the testimony also indicated, as in *Skipper*, that this amount was also consistent with personal use. In particular, Detective Rodriguez testified that a crack cocaine user may smoke, in one day alone, close to $500 worth, an amount that exceeds even the highest value he assigned to the cocaine found in Hunt's house.

*Id.* (citing *United States v. Skipper*, 74 F.3d 608, 611 (5th Cir. 1996)).

Regarding the gun, the court referenced situations where a loaded gun was found in a drawer with a large quantity of cocaine and/or where a defendant saw authorities watching him feeding bales of marijuana on a conveyor belt to a boat and ran for his loaded weapons, and said: "Unconnected with any such circumstances, however, the gun is no more probative of distribution of drugs than of other, non-nefarious purposes for which one may keep a gun." *Id.* at 744. This court then determined that the larger quantity of crack cocaine, along with a razor blade, evidence of blunts, the gun, the government's testimony, and Hunt's own testimony that she did not use crack was insufficient to establish intent to distribute.

Similar to *Hunt*, the authorities did not find paraphernalia here. There was also a gun with no evidence of any connection to the drugs. Unlike Hunt's testimony, McCree admitted to using crack on a regular basis, and in a manner consistent with the detective's testimony in *Hunt*, as quoted above, which negates reliance on paraphernalia. Again, we do not have any evidence of the weight or size of the rocks here. But the addendum to McCree's PSR characterizes them as "five individual pieces of crack rocks" and "five crack cocaine pieces relatively equal in size." Five relatively equal sized pieces of crack rock would appear to be less than one large rock and several smaller rocks that are still larger than typical rocks.

In *Skipper*, this court concluded that 2.89 grams of crack cocaine "is not clearly inconsistent with personal use" and "is insufficient to prove intent." 74 F.3d at 611. The Supreme Court has also held that 14.68 grams of cocaine is a personal-use amount. *See Turner v. United States*, 396 U.S. 398, 423-24 (1970). In *United States v. Dotsey*, No. 95-50050, 1995 WL 534956, at *1 (5th Cir. Aug. 1, 1995) (unpublished), this court affirmed a sentence involving the sale of rocks of crack weighing .10, .20, and .35 grams, for an average of .16 grams per rock, to an undercover agent. As an example, even if McCree's five rocks were equivalent to the largest size of .35 grams in *Dotsey*, which is not likely, the total weight would only be 1.75 grams—well under a personal-use amount. Additionally, that total would not necessarily be entirely cocaine, as additional ingredients are added to make crack.

Although it is not controlling, it also is worth mentioning that there is a more recent state court appellate decision from Louisiana which found that five rocks of crack cocaine (weighing a total of .77 grams) is consistent with personal use. *See State v. James*, 2016-522 (La. App. 3 Cir. 4/15/17); 216 So.3d 117, 121-24. This weight averages .15 grams per rock, which is just below the average weight in *Dotsey*. Additionally, district courts in Louisiana have relied on five factors set out by the Louisiana Supreme Court in

No. 23-30218

determining whether circumstantial evidence is sufficient to prove the intent to distribute. *See Stewart v. Cain*, No. CIV A 00-1651, 2000 WL 1511686, at *11 (E.D. La. Oct. 10, 2000) (quoting *State v. Hearold*, 603 So.2d 731 (La. 1992)). Those factors are:

> (1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.

*Hearold*, 603 So.2d at 735. None of those factors are present here.

Because the record here does not support a plausible finding that McCree's possession of a firearm facilitated or had the potential to facilitate his possession of a small quantity of crack cocaine and there is no basis for the majority's conclusion that McCree possessed more than a personal-use amount of crack cocaine or was involved in drug trafficking, I conclude that the district court erred in applying the enhancement.[9]

For the reasons stated herein, I respectfully dissent in part.

---

[9] The majority references the dissent and states: "The ultimate question, however, is not whether this court would reach the same decision as the district court, but whether the record contains evidence rendering plausible the application of the sentencing enhancement. It does, warranting affirmance." Nowhere do I say or suggest that the standard is whether this court would reach the same decision as the district court. Instead, I consistently apply the correct standard as set out in *Jeffries* and *Henry*, both of which the majority ignores—particularly the analysis on what is and is not plausible—before engaging in erroneous fact-finding unsupported by the record or relevant authority.